HOWARD VOSBURGH, Appellant, *v.* JOHN F. DIEFENDORF, Respondent.

Where the maker of negotiable paper shows that it has been obtained from him by fraud, a subsequent transferee, must, before he is entitled to recover thereon, show that he is a *bona fide* purchaser, or that he derived his title from such a purchaser. It is not sufficient to show simply that he purchased before maturity and paid value, he must show that he had no knowledge or notice of the fraud.

In an action upon a promissory note against defendant as maker, it appeared that his signature thereto was procured by fraud. The note was purchased of the payee by R. before maturity, for half its face value. Plaintiff claimed as purchaser from R. Defendant's evidence tended to show that R. purchased with moneys furnished by plaintiff, who was present at the time of the transfer and directed R. to purchase. R. testified that he had no knowledge of the fraudulent origin of the paper, or of any facts constituting a defense. Neither the plaintiff nor the payee were sworn as witnesses. The trial court held that plaintiff, as matter of law, was entitled to recover the amount he paid for the note, but if anything beyond that was claimed, the case was one for the jury. Plaintiff having elected to take a verdict for the amount he paid for the note, a verdict was directed accordingly. *Held*, error; that the question as to whether plaintiff was a *bona fide* purchaser, was one of fact for the jury; as was also the question as to whether R. purchased for himself or as agent; that if in the latter capacity, although he was not chargeable with notice of the fraud, this would not shield plaintiff from the legal consequences of any notice he himself might have had.

*Dalrymple* v. *Hillenbrand* (62 N. Y. 5), *Cowing* v. *Altman* (71 id. 435), distinguished.

(Argued January 22, 1890 ; decided February 25, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department made May 17, 1888, which reversed a judgment in favor of plaintiff entered upon a verdict directed by the court, and granted a new trial.

The nature of the action and the material facts are stated in the opinion.

*Matthew Hale* for appellant. There was no question of fact to be submitted to the jury. (*Kelly* v. *Burroughs*, 102 N. Y. 93, 95, 96; 51 Hun, 537; 1 Daniel on Neg. Inst. § 803; *Com.* v. *Clark*, 94 U. S. 278; *Cromwell* v. *County of Sac*, 96 id. 351; *Griffith* v. *Griffith*, 9 Paige, 315; *Varick* v. *Briggs*, 6 id. 323.) The plaintiff was entitled to a verdict upon the facts and the trial court properly so held. (*Hart* v. *Potter*, 4 Duer, 458; *Dalrymple* v. *Hillenbrand*, 62 N. Y. 5, 6; *Cowing* v. *Altman*, 71 id. 435, 439, 440; 1 Daniel on Neg. Inst. [2d ed.] 668, § 819; Byles on Bills, 118; *Catlin* v. *Hanson*, 1 Duer, 309; *Davis* v. *Bartlett*, 12 Ohio St. 534; *Phelan* v. *Moss*, 67 Penn. St. 59; *Swift* v. *Smith*, 102 U. S. 442; *Bailey* v. *Smith*, 14 Ohio St. 462; *Goodman* v. *Simonds*, 20 How. [U. S.] 343; *Murray* v. *Lardner*, 2 Wall. 110; *Chapman* v. *Rose*, 56 N. Y. 137, 140; *N. Bank* v. *Young*, 41 N. J. Eq. 531, 538; *Seymour* v. *McKinstry*, 106 N. Y. 240; 43 id. 301; *Bailey* v. *Bidwell*, 13 M. & W. 73; *Hart* v. *Potter*, 4 Duer, 458; *Bay* v. *Coddington*, 5 Johns. Ch. 54; 20 Johns. 634; *Stalker* v. *McDonald*, 6 Hill, 93; *McBride* v. *F. Bank*, 26 N. Y. 450, 454; *Comstock* v. *Hier*, 73 id. 269, 273; *Swift* v. *Tyson*, 16 Pet. 1.) The trial court properly held that there was no question of usury arising upon the evidence in the case. (*Manning* v. *Tyler*, 21 N. Y. 567; *W. T. & C. Co.* v. *Kilderhouse*, 87 id. 430, 436; *Morford* v. *Davis*, 28 id. 481; *Harger* v. *Wilson*, 63 Barb. 237; *Howe* v. *Potter*, 61 id. 356.) No defense was proved under chapter 65 of the Laws of 1877, and the court properly ruled against the defendant on the question. (*Herdic* v. *Roessler*, 109 N. Y. 127.)

*Z. S. Westbrook* for respondent. The note in question is absolutely void under chapter 65, Laws of 1877, in not having the words "given for a patent right," written or printed upon the face thereof, above the signature, as thereby required, in the hands of any purchaser who is not a *bona fide* holder. (Laws of 1877, chap. 65; *Spring* v. *Quance*, 3 How. Pr. [N. S.] 65; *Palmer* v. *Minor*, 8 Hun, 342; *Herdic* v. *Roessler*, 109 N. Y. 127; *Barton* v. *P. J., etc., P. R. Co.*, 17 Barb. 397.) The note in question is void for usury, it never having had a valid inception before the transfer thereof to plaintiff at an unlawful rate of discount, that is, for fifty per cent of its face value. (*Ramsdell* v. *Morgan*, 16 Wend. 574; *Hall* v. *Wilson*, 16 Barb. 548, 550; *Wardell* v. *Howell*, 9 Wend. 170; *Catlin* v. *Gunter*, 11 N. Y. 368; *Eastman* v. *Shaw*, 65 id. 522; *Sweet* v. *Chapman*, 7 Hun, 576.) The cancellation of the note was valid, and that of itself, though it was a sham and the note was not in fact burned up, annulled the note and rendered it invalid as an obligation. It was a good cancellation, without any consideration paid therefor. (*Larken* v. *Hardenbrook*, 90 N. Y. 333.) The court erred in holding that as a matter of law the plaintiff was a *bona fide* holder of the note, and entitled, therefore, to recover the amount paid for the same. (1 Randolph on Neg. Paper, § 14; 1 Parsons on Cont. 254; *Stalker* v. *McDonald*, 6 Hill, 93.) The question whether plaintiff was a *bona fide* holder, should have been submitted to the jury. (*F. N. Bank* v. *Green*, 43 N. Y. 298; *F. & C. N. Bank* v. *Noxon*, 45 id. 762; *G. Bank* v. *Penfield*, 69 id. 502; *Comstock* v. *Hier*, 73 id. 273, 274; *D. S. M. Co.* v. *Best*, 105 id. 59; *Seymour* v. *McKinstry*, 106 id. 240; *Vosburgh* v. *Diefendorf*, 16 N. Y. S. R. 493; *Stewart* v. *Lansing*, 104 U. S. 505; *Wardell* v. *Howell*, 9 Wend. 107; *Tinsdale* v. *Murray*, 9 Daly, 446, 449; *Benton* v. *Martin*, 52 N. Y. 570; *Bookstaver* v. *Jayne*, 60 id. 146; *Daniels* on Neg. Inst. § 777; *Williamson* v. *Brown*. 15 N. Y. 354; *Gould* v. *Stevens*, 43 Vt. 125; *Baker* v. *Bliss*, 39 N. Y. 70; *Nutter* v. *Stover*, 48 Me. 163; *Steinhart* v. *Baker*, 34 Barb. 436; *Hamilton* v. *Marks* 52 Mo. 78; *Merritt* v.

*Duncan,* 7 Hisk. 156; 1 Daniels on Neg. Inst. 746; Chitty on Bills and Notes, 295; 1 Edwards on Bills and Notes, § 517; 1 Parsons on Bills, 260; Story on Prom. Notes, § 197; 2 Randolph on Coml. Paper, 693; *Smith* v. *Harlon,* 64 Me. 510; *Oakley* v. *Ordeen,* 2 F. F. 656; Craft's Appeal, 42 Conn. 146; *Austin* v. *Grunner,* 90 Ill. 300; *Lay* v. *Wissman,* 36 Ia. 305; *De Witt* v. *Perkins,* 22 Wis. 474; *Bailey* v. *Smith,* 14 Ohio St. 396; *Herth* v. *M. N. Bank,* 34 Ind. 380; *Gould* v. *Stevens,* 43 Vt. 125; *Goldsmid* v. *L. C. Bank,* 16 Barb. 410; *Gould* v. *Segee,* 5 Duer, 270; *Taylor* v. *Atchison,* 54 Ill. 196; *Ormsbee* v. *How,* 54 Vt. 182; *Brookman* v. *Milbank,* 50 N. Y. 378.) The plaintiff was bound to prove that he was a *bona fide* holder. (*Stewart* v. *Lansing,* 104 N. Y. 505; *Elwood* v. *W. U. T. Co.* 45 id. 549, 554; *Kavanaugh* v. *Wilson,* 70 id. 177, 179; *Sheridan* v. *Mayor, etc.,* 8 Hun, 424; *McNulty* v. *Hurd,* 86 N. Y. 547, 553, 554; *Gildersleeve* v. *Landon,* 73 id. 609, 610; *Dean* v. *Van Nostrand,* 23 Wkly. Dig. 97; *Longyear* v. *U. S. L. Ins. Co.,* 20 id. 165; *Honegger* v. *Wettstein,* 94 N. Y. 252, 261; *Karney* v. *Mayor, etc.,* 92 id. 617; *Cross* v. *Cross,* 108 id. 628; *Becker* v. *Roch,* 104 id. 394, 404; *People ex rel.* v. *French,* 17 N. Y. S. R. 100; *Moody* v. *Prell,* 2 Abb. [N. C.] 274; *Stillwell* v. *Carpenter,* 2 id. 238; *Hodge* v. *City of Buffalo,* 1 Abb. [N. C.] 356; *Nicholson* v. *Connor,* 8 Daly, 212; *Posthoff* v. *Schreiber,* 47 Hun, 593, 598; 94 N. Y. 261; 86 id. 553, 554.) Giving *prima facie* evidence of a fact does not shift the burden of proof. (*Heinman* v. *Heard,* 62 N. Y. 448.) The failure of plaintiff to produce witnesses Henderson and Van Valkenburgh, as well as himself, to testify in his behalf, were strong circumstances against him. (*Brooks* v. *Sterm,* 6 Hun, 516; 15 J. & S. 436; *Bleecker* v. *Johnston,* 69 N. Y. 309.) The order will be affirmed, if there were any legal errors of the trial court appearing in the record, whether noticed by the court below or not. (*Mackay* v. *Lewis,* 73 N. Y. 382.)

O'Brien, J. This action was upon an instrument, in form, a promissory note, of which the following is a copy:

"$2,000.          Gouverneur, N. Y., *December* 15, 1886.

"Sixty days after date I promise to pay R. T. Van Valkenburgh or bearer Two Thousand Dollars at Spraker's National Bank, Canajoharie, N. Y., value received, with interest at the rate of six per cent per annum.

"JOHN F. DIEFENDORF."

The defendant is the maker of the note, and at its date was a farmer who lived in the town of Root, about ten miles from Canajoharie, where, by the terms of the instrument, it was payable.

The defenses interposed to the note are,

1. That it was obtained from defendant by fraud and deceit practiced upon him by the payee.

2. That its only consideration was an interest in a patent right for improvements in fire kindlers, and that it did not comply with the provisions of chapter 65 of the Laws of 1877, requiring the words, "given for a patent right," to be written or printed across the face thereof.

3. That the note was void for usury, in that, before it had any legal inception, it was transferred to the plaintiff for one-half its face value.

4. That the note was never executed or delivered as a note or valid obligation, and that between the original parties thereto it had been cancelled and destroyed, and that the plaintiff was not a *bona fide* holder.

The defendant testified at the trial and gave his version of the transaction, which resulted in his signing the note in question. In brief it is this: In the month of December, 1886, one Henderson, who falsely represented that he was interested in a firm, composed of himself, the payee of the note, and another person, that was engaged in manufacturing fire kindlers under a patent, which was a valuable invention, and that the business promised large gains, called upon the defendant at his house and induced him to

go to Rochester with him, to the end that he might obtain an interest in the business, or be employed in connection with it. The defendant went to Rochester, and there was introduced to Van Valkenburgh, the payee of the note in question. It does not distinctly appear what took place at Rochester, except that the defendant gave his notes for $8,000, on the representations, as he claims, that these notes were not to be used or transferred, and were simply memoranda showing his one-third interest in the business of manufacturing and selling fire kindlers. While defendant was at Rochester Henderson disappeared, and it seems went to Canajoharie and negotiated the notes thus obtained. In the meantime Van Valkenburgh induced the defendant to go with him to Gouverneur, where they arrived a day or two before the date of the note in question. The defendant supposed he was to aid in some way in the sale of the right to manufacture and sell the fire kindlers under the patent in which he supposed he had, or was about to have, an interest as an equal partner with Henderson and Van Valkenburgh. On arriving at Gouveneur, they went to a hotel and there met two other persons, who pretended to be anxious to purchase the right covered by the patent for the state of Iowa. These two persons with the defendant, and the payee of the note in question, went to a room and there the defendant was induced to sign two notes of $2,000 each, of which the note in suit is one. Van Valkenburgh pretended to sell, and the two persons before referred to to buy, two-thirds of the right covered by the patent in the state of Iowa for $8,000, and in the presence of defendant each of them gave, or pretended to give, to Van Valkenburgh his note for $4,000. Defendant was told by Van Valkenburgh that, in order to consummate this sale, it would be necessary for him to go through the form of giving his note for the same amount, that is to say $4,000, in order to represent the interest that the firm still retained in that state. That after the transaction was completed this note could be returned to him, and that, in any event, the paper would not be used as a note, or transferred. The defendant assented to this arrangment and Van Valkenburgh

thereupon drew, and procured the defendant to sign and deliver, the two notes of $2,000 each. After all the parties had left the room and defendant supposed that the transaction was completed, and that the notes he signed had answered the purpose for which they were intended, he called the attention of Van Valkenburgh to the promise he had made to destroy the notes, whereupon he drew from his pocket two pieces of paper that appeared like the notes defendant had signed and burnt them in defendant's presence. The defendant and Van Valkenburgh then parted, the defendant returning to his home, in Montgomery county, and without seeing either Henderson or Van Valkenburgh afterwards.

The plaintiff claimed to have purchased the note in suit from one Richmond, a few days after its date, and Richmond claimed to have bought it the same day from Henderson. The testimony was that Richmond, Henderson and the plaintiff were together at the time of the transaction that resulted in the transfer of the note to the plaintiff. That Henderson delivered to Richmond the two notes of $2,000 each, made at Gouveneur, for half their face value ; that Richmond kept one of them himself and delivered the other to the plaintiff who furnished the money paid Henderson for it, and directed Richmond to purchase it. Richmond testified that he had no knowledge of the fraudulent origin of the paper, or of any fact constituting a defense thereto by the maker. The two persons who were present with the defendant and the payee of the note at Gouverneur when it was made testified in behalf of the plaintiff, and in contradiction of the defendant's version; but neither the plaintiff, Henderson nor Van Valkenburgh were sworn.

It is plain that the jury could well have found, from the testimony of the defendant and the facts and circumstances surrounding the transaction, that the note in question was procured from the defendant through a gross fraud practiced upon him by the payee. This was the condition of the case when the proofs closed. The trial court thereupon ruled that the plaintiff, as matter of law, was entitled to recover the amount

he had paid for the note, but if anything beyond that was claimed, then the case was one for the jury. The plaintiff elected to take a verdict for one-half the face of the note and interest, and the court, against the defendant's objection and exception, directed a verdict accordingly, and the judgment entered thereon has been reversed by the General Term.

Apart from the claim that the plaintiff derived title to the note from one who was a *bona fide* holder, and, therefore, succeeded to all his rights, which will be noticed hereafter, he was not entitled to recover as the case stood. For all the purposes of this appeal it must be assumed that the note was procured by fraud practiced upon the defendant by the payee, because evidence was given from which such fact could have been found by the jury. The defendant had a good defense to the note against the payee, if it had remained in his hands and he had attempted to enforce it. The plaintiff was in no better position unless, within the law merchant, he was a *bona fide* holder, and as against the case made by the defendant on the trial, the plaintiff did not establish that character for himself by merely producing the note and proving that he paid one-half its face value for it. The learned counsel for the plaintiff contends that in this case the burden of proving notice to the plaintiff of the facts connected with the execution of the note and of the fraud, if any, was upon the defendant, and that in the absence of such proof by the defendant, the plaintiff was entitled to recover.

We think that this proposition cannot be maintained. Doubtless some support may be found for it in certain elementary books, and in some of the adjudged cases in other states. But in this state it must be regarded now as a settled rule that when the maker of negotiable paper shows that it has been obtained from him by fraud or duress, a subsequent transferee must, before entitled to recover on it, show that he is a *bona fide* purchaser. (*First Nat. Bk.* v. *Green,* 43 N. Y. 298; *F. & C. Nat. Bk.* v. *Noxon,* 45 id. 762.; *Ocean Nat. Bk.* v. *Carll,* 55 id. 440; *Wilson* v. *Rocke,* 58 id. 642; *Grocers' Bk.* v. *Penfield,* 69 id. 502; *Nickerson* v. *Ruger,* 76 id. 279; *Sey-*

*mour* v. *McKinstry*, 106 id. 240; *Stewart* v. *Lansing*, 104 U. S. 505; *Smith* v. *Livingston*, 111 Mass. 342; *Sullivan* v. *Langley*, 120 id. 437.)

The plaintiff did not satisfy this rule by showing that he paid value for the note. It was necessary, in order to entitle him to recover, to go further and show that he had no knowledge or notice of the fraud with which the instrument was tainted from its origin. The large discount at which the plaintiff purchased the note, the circumstances attending the purchase, his knowledge of the original parties to the transactions, and especially of Henderson, one of the actors in the scheme which resulted in putting the note in circulation, were all proper subjects for the consideration of the jury, with reference to the plaintiff's innocence and good faith.

In *The First National Bank* v. *Green* (*supra*), RAPALLO, J., stated the rule of evidence in such cases in these words: "A plaintiff, suing upon a negotiable note or bill, is presumed, in the first instance, to be a *bona fide* holder. But when the maker has shown that the note was obtained from him under duress, or that he was defrauded of it, the plaintiff will then be required to show under what circumstances and for what value he became the holder. (2 Greenl. on Ev. § 172; *McClintick* v. *Cummins*, 2 McLean, 98; *Munroe* v. *Cooper*, 5 Pick. 412; *Holme* v. *Karsper*, 5 Binn. 469; *Valett* v. *Parker*, 6 Wend. 615; 1 Camp. 100; 2 id. 574; 4 N. Y. 166.) The reason for this rule, given in the later English cases, is that 'where there is fraud, the presumption is that he who is guilty will part with the note for the purpose of enabling some third party to recover upon it, and such presumption operates against the holder, and it devolves upon him to show that he gave value for it.' (*Bailey* v. *Bidwell*, 13 Mees. & Wels. 74; *Smith* v. *Braine*, 3 Eng. L. & Eq. 379, and in *Harvey* v. *Towers*, 4 id. 531.)" The rule established in this case has been adhered to in this court ever since, as will be seen from the cases above cited.

In *Stewart* v. *Lansing* (*supra*), WAITE, Ch. J., stated the principle thus: "It is an elementary rule that if fraud or ille-

gality in the inception of negotiable paper is shown, an indorsee, before he can recover, must prove that he is a holder for value. The mere possession of the paper, under such circumstances, is not enough. (*Smith* v. *Sac County*, 11 Wall. 139.) Here the actual illegality of the paper was established. It was incumbent, therefore, on the plaintiff to show that he occupied the position of a *bona fide* holder before he could recover."

In *Smith* v. *Livingston* (*supra*), MORTON, J., expressed the rule in the following language: "The indorser of a promissory note who takes it for value, in good faith, in the usual course of business, before its maturity, is entitled to recover upon it, though the maker has a good defense against the payee on the ground that it was obtained by fraud. But upon proof that a note is founded in illegality, or was obtained or put in circulation fraudulently, the burden of proof is upon the indorsee to show that he took it for value and in good faith before maturity."

The learned counsel for the plaintiff has called our attention to two cases in this court which, he insists, sustain the rule contended for by him. (*Dalrymple* v. *Hillenbrand*, 62 N. Y. 5, and *Cowing* v. *Altman*, 71 id. 435.)

The first of these cases was an action by the holder against the indorser of a note, given by a firm which had been adjudicated bankrupt under the late act of congress to one of its creditors. The payment of the note was resisted by the indorser on the ground that it was illegal, or void under the statute prohibiting preferences by bankrupts. It was held that the giving of such a note was not a fraudulent preference under the law, though the makers, when they gave the note, had been adjudged bankrupts, because the advantage thus secured by the creditor was not payable out of the bankrupt's estate, but was due to the fact that the debtors were able and willing to procure the defendant's indorsement. The defense that the note was used by the creditor, in violation of a condition upon which the indorsement was given, was held untenable because not pleaded. The rule of evidence now under consideration was not involved.

In *Cowing* v. *Altman*, the action was upon a check, payment of which was resisted by the maker upon the ground that it was given under an agreement to pay an assignee in bankruptcy a compensation greater than that provided by the act, and which was forbidden. It was held that the check was good in the hands of a *bona fide* holder. The check, however, was not transferred until fourteen months after its date, and the controversy in that case turned upon the point whether, when received by the plaintiff, it was not past due and dishonored. But it was shown that the bank from which the plaintiff took the check paid full value for it, and there was no attempt to impeach its right, except upon the ground that the check was past due. The question of actual notice to the bank of the consideration of the check was not raised and was not involved. These cases, when understood, do not decide any principle with respect to the burden of proof in cases where it is shown that the negotiable paper has been procured from the maker by fraud, inconsistent with the rule above stated.

The plaintiff did not meet the requirements of this rule, for he remained silent upon the subject of notice of the circumstances under which the maker gave the note. The most favorable view that could have been taken of the case for the plaintiff would still require the question of his good faith to be passed upon by the jury. It is true that the plaintiff could have recovered if he derived his title to the note from one who was a *bona fide* holder, even though he had notice himself of the fraudulent character of the paper. (*Cowing* v. *Altman*, 71 N. Y. 438, 443; *Cromwell* v. *County of Sac.* 96 U. S. 51; *Commissioners* v. *Clark*, 94 U. S. 278; *Eckhert* v. *Ellis*, 26 Hun, 664; Daniel on Neg. Inst. § 803 and cases cited; Story on Prom. Notes, § 191.) And it is contended that Richmond, from whom the plaintiff took the paper, was shown to be innocent of any imperfection in it. But the testimony tended to show that Richmond bought the note from Henderson, as the agent, and by direction of, and with funds subsequently furnished by the plaintiff. It is quite clear, we think, that the

testimony on this point was of such a character that it could not be held that, absolutely and as a matter of law, Richmond ever had any title to the note, and, unless he had, his connection with its purchase, as a mere agent or instrument of the plaintiff, could not confer the character of a *bona fide* holder, or shield the plaintiff from the legal consequences of any notice that he might have had of the fraudulent origin of the paper as between the maker and the payee. The most that can properly be conceded in regard to this branch of the case, is that Richmond's connection with the transfer, and whether, as owner or agent of the plaintiff, was a question of fact for the jury. The good faith of Richmond was not available to strengthen the plaintiff's case, unless it was found that Richmond was the owner of the note when it was delivered to the plaintiff.

It follows that the General Term properly reversed the judgment, and as this conclusion disposes of the case, it is not necessary to consider the other questions raised.

The order appealed from should be affirmed and judgment absolute ordered for the defendant, with costs.

All concur.

Order affirmed and judgment accordingly.