CHARLES B. FRANC, Respondent, *v.* HENRY H. DICK-INSON, Appellant.

*Court of Appeals, Jan.* 13, 1891.

Rev'g. 52 Hun, 373.

1. *Bills and notes. Bona fide holders.*—Where notes are procured, by virtue of an agreement that they are to be mere memoranda, not to be paid nor to partake of the nature of promissory notes, the burden rests upon the holder to show that he, or some one of the prior holders, had taken the notes in suit in good faith, before maturity, for full value, in the usual course of business.

2. *Same.*—A large discount, obtained upon the note of a perfectly solvent maker, which has but a short time to run, is a circumstance for the jury to consider upon the question of good faith.

Appeal from a judgment of the general term of the supreme court, affirming a judgment entered upon a verdict di-

rected by the court, and affirming an order denying a motion for a new trial.

*James McKeen,* for appellant.

*John L. Hill,* for respondent.

PECKHAM, J.—The proof in this case should have been submitted to the jury. There was sufficient evidence, if believed, for the jury to find that Sterner procured the notes (of which that in suit was one) from defendant fraudulently. Even if the transaction between defendant and Sterner would otherwise have amounted to a sale of the stock and the giving of notes in payment, yet, if such purchase were procured by fraud, and the notes were obtained in carrying it out, and by virtue of an agreement that they were to be mere memoranda, not to be paid, and not to partake of the nature of promissory notes, then the burden rested on the plaintiff to show that he, or some one of its prior holders, had taken the note in suit in good faith before maturity, for full value in the usual course of business. Canajoharie Nat'l Bank *v.* Diefendorf, decided October term, 1890, by this court ; 33 N. Y. State Rep. 389 ; Vosburgh *v.* Diefendorf, 119 N. Y. 357; 29 N. Y. State Rep., 448.

If the jury believed the evidence of Dickinson, they might have found that Sterner sold the stock to defendant, and procured the notes from him by means of the statements contained in the circular, and by falsely pretending that it was desirable to have the stock of the company held by a few parties in order to control it, but that the notes to be given by defendant in exchange for the stock issued to him were to be regarded only as memoranda, and not in any real sense as promissory notes, and that in no event was Dickinson to be called upon to pay them. The inducement offered for such giving of the notes was, that defendant should have the benefit of any sale of the stock which Sterner might make

over the price which was named to him for his taking it, and that the notes, although only memoranda, should, in case of the sale of the stock, be then paid out of its proceeds, but in no event should the defendant be called upon to pay any part of them.

Taking the whole of defendant's evidence, it might also bear the construction that the transfer of the 50,000 shares to him was merely formal; that Sterner was still to make the sale of the stock, and to induce defendant to give the notes it was agreed that defendant should have the profit of the sales over the amount of the notes, and that in no event should the defendant be called upon to pay them, and that they were to be used only as memoranda. In that event, if Sterner made these representations in order to procure the notes which he intended to use for his own benefit, then their acquisition was a fraud, and Sterner could not have maintained any action on them. Nor could any one else who was not a *bona fide* purchaser.

The stock was never sold, and there appears to be no doubt that it was at this very time wholly without value. The jury might have found that the defendant was not aware of such fact at that time. In saying the jury might have found these facts, I, of course, do not say that it should or should not have found them, but that the evidence made it a question for the decision of the jury, and not for the court. If, upon the evidence, the jury might find that a fraud had been practiced upon the defendant, by which the notes were procured, then it was necessary for the plaintiff, under the authority of the above cited cases, to show the circumstances under which he purchased, or under which some prior holder purchased, the note before maturity, in order to show that he was entitled to the benefit to be derived from the position of a *bona fide* purchaser.

We think there was enough in the case to render it necessary to submit this question also to the jury. It appeared that Mr. Wild, a former holder of the note, purchased it

from Sterner about December 31, 1886, when it had about three months to run. The note was for $2,400, dated December 7th, and payable in four months from date. He took a discount of $450, paying $1,950 only. Or, in other words, he succeeded in obtaining a rate of interest for his investment of over seventy per cent, and the maker of the note was, so far as appears, entirely solvent and able to pay it at maturity, so that no risk was run of that nature. The defendant says Wild asked him once, "How about this note of yours ; is it all right ? " The defendant says he answered, " So far as giving the note to Mr. Sterner was concerned, I suppose it was all right, but that it was distinctly understood that the note was not to be negotiated."

Defendant says at this time he did not understand that Wild intended to purchase. This was before the purchase of the note by Wild, as he says. Wild testifies to quite a different conversation between him and defendant, and it was upon the strength of defendant's answer, as testified to by Wild, that he says he purchased the note. The jury might have found the defendant's version the correct one. If so, we think it was upon the facts in the whole case a question for the jury to say whether the plaintiff represented the rights of a *bona fide* purchaser. The large discount obtained by Wild upon the note of a perfectly solvent maker, and having but a short time to run, was one of the circumstances for the jury to consider upon the question of good faith. The defendant's answer might have been interpreted, by any one who heard it, as a simple acknowledgment that he had made such a note in form and given it to Sterner, but there was flowing from the transaction no right in Sterner to negotiate it, and it was expressly agreed that it should not be negotiated. At this point Mr. Wild stopped further questioning. An intending purchaser of a note upon hearing such an answer to the question, might naturally proceed further and inquire into the transaction in order to see how far he would be safe in purchasing. The answer was one tending to rouse suspicion, at

the very least, even if it did not prevent an intending *bona fide* purchaser from taking further steps in the matter. To cease questioning the maker at such a point and to go at once to Sterner and purchase the note at this enormous discount, and without, so far as appears, seeking any further information from defendant, or even from Sterner, as to the transaction, might lead a jury possessed of ordinary intelligence to a belief that the intending purchaser did not desire any further information, that he studiously omitted to seek for it, and that in truth he was not such a *bona fide* purchaser as the law protects.

Assuming the jury to find that the note was procured by fraud, the plaintiff, having omitted proof as to how any one other than Wild obtained it, is bound by the position which the jury might from the evidence in the case find that Wild occupied towards such note. If he were not a *bona fide* purchaser, the plaintiff could not recover.

The questions above discussed should have been submitted to a jury.

The judgment should be reversed and a new trial ordered, costs to abide event.

All concur.