### PELLY v. ONDERDONK et al.

(Supreme Court, General Term, First Department. November 18, 1892.)

NEGOTIABLE INSTRUMENTS—FRAUD—EVIDENCE—BONA FIDE PURCHASERS.

In an action by the transferee of a note given for stock of a corporation organized by the payee, defendant, and others, for the manufacture of paints, the formulas for which the payee was patentee, defendant pleaded want of consideration because of fraudulent representations by the payee in relation to the value of the patent and in making the contract for the organization of the corporation. The evidence showed that subsequent to the organization certificates of stock, for which the note with others was given, together with the notes, were by agreement deposited with a third person, to be held pending a test of the paints proposed to be manufactured; that defendant was a member of the committee appointed to make the test; that afterwards the committee reported in writing that the paints were as represented by the payee, and the notes should be delivered, which was done, and defendant received his stock pursuant to the agreement. There was no evidence that the payee had anything to do with making the test or with procuring the delivery of the notes. *Held,* that the evidence eliminated from the case all question of fraud on the part of the payee, and plaintiff was entitled to judgment on his own evidence that he was holder in good faith and for value.

Appeal from circuit court, New York county.

Action by Herbert Cecil Pelly against William M. Onderdonk, impleaded with others, on a promissory note. Plaintiff had judgment by direction of the court, and defendants appeal. Affirmed.

For report on prior appeal, see 15 N. Y. Supp. 915.

Argued before VAN BRUNT, P. J., and O'BRIEN and LAWRENCE, JJ.

Edward S. Clinch, for appellants.

Birdseye, Cloyd & Bayliss, (Lucien Birdseye, of counsel,) for respondent.

LAWRENCE, J. This case has been before the general term of this court on a previous occasion, (15 N. Y. Supp. 915,) and it was there held that the justice holding circuit erred in excluding evidence which was offered by the defendant for the purpose of showing that the note upon which this action is brought was obtained from the defendant by means of fraudulent representations made by Griffiths, the payee, and by whom the same was indorsed to the plaintiff. Upon examining the

opinion then delivered, it is apparent that the court held, in accordance with a long line of cases, that, where an action is brought upon a promissory note, and the defendant has pleaded that the same was obtained by him through fraud or misrepresentation, the plaintiff's deposition that he is a bona fide holder for value does not preclude the defendant from giving evidence of the alleged fraud. Pelly v. Onderdonk, (Sup.) 15 N. Y. Supp. 915. The defendant Onderdonk alleges that the defendant Griffiths, claiming to be the owner and inventor of certain processes or formulas for the manufacture of certain paints and liquids, made certain representations to him in regard to the quality, character, durability, appearance, and cost of the production of said articles; and that, in reliance upon and in the belief that the representations made by the defendant Griffiths were true, and at his instigation and request, the defendant Onderdonk and the defendants Robinson, Naylor, and Moore, who were associated with him, procured to be incorporated under the laws of the state of New York a corporation known as the American Aquol & Pyrodene Paint Company, for the purpose of manufacturing, selling, and dealing in the articles referred to, with a capital stock of $75,000, consisting of 750 shares, each of the par value of $100, and under the agreement that the defendant Griffiths should sell and transfer to the said company his alleged processes or formulas for the manufacture of aquol, pyrodene paint, pyrodene liquid, glassine, and cycle enamel; and that, in consideration of the transfer to the said Griffiths of a certificate or certificates for the entire capital stock of said company, and the delivery to him of the promissory note of the company for $18,-500, and also under the agreement that the defendant Onderdonk and his associates should purchase from said Griffiths 315 shares of the said capital stock, a certificate or certificates of the said entire capital stock of said company was or were transferred to the said Griffiths, and the promissory note of said company for $18,500 was delivered to him and his associates; also, that in pursuance of said agreement the said Griffiths delivered to the defendant, and the defendant received from said Griffiths, a certificate for 84 of the shares of the capital stock of said company so transferred to said Griffiths as aforesaid, and paid said Griffiths therefor at the par value thereof by cash and by three promissory notes of the defendant, two of which have been paid, and the other of which is the note described in the complaint herein. It is further averred that the defendant, at the time of paying said cash, and making and delivering said notes, and the payment of said two notes, believed and relied upon the representations made by said Griffiths in respect to the said alleged processes or formulas to the said articles, their usefulness and value, etc. It is further averred that after the purchase by the defendant of said shares of capital stock the said company purchased, for the manufacture of said articles, expensive machinery, selected by Griffiths for that purpose, and expended about or upwards of $40,000 in the attempt to manufacture said articles according to said processes or formulas sold by said Griffiths to said company; and then for the first time said company and defendant ascertained that it was not possible to produce by said formulas or processes articles having the qualities represented by

Griffiths as aforesaid, or to manufacture under said formulas or processes at the cost represented by him; and that, in consequence thereof, the company was unable to carry on its business, and became financially embarrassed and insolvent, and discontinued its business.

On the trial which resulted in the judgment from which the present appeal was taken, the plaintiff, after having offered in evidence the note in suit. and after having read the deposition of the plaintiff, in which it is stated that on the 20th of March, 1890, he became the holder and owner of the said promissory note for value given by him on said date in good faith, proved the minutes of the company by the president of said company, and then rested his case. Thereupon the defendant was examined in his own behalf, and proved that, after certain negotiations or transactions with one Frank Smith, the agent of Griffiths, a conditional agreement was entered into on the 27th of March, 1889, between Griffiths, of the first part, and Onderdonk and four associates, of the second part, which agreement is fully set forth in the printed case. The defendant testified that subsequent to the execution of the conditional agreement Griffiths came to this country, and certain nego·tiations were had with him, in which, the defendant testifies, Griffiths made representations respecting the qualities of "these specialties." He further testified that a subsequent agreement was entered into between Griffiths, himself, Naylor, Robinson, and others, that involved the formation of a company for the manufacture of."these specialties." The certificate of incorporation of said company was offered and received in evidence. The defendant further testified that, as the result of the agreement with Griffiths, the company was organized, and stock was issued to him, and a note for $18,000 was given to him. He further testified that Griffiths parted with some of that stock subsequently, and that he and Robinson bought some of the stock from Griffiths, and paid him money and gave him notes for it, and that the note in suit is one of the notes given for said stock. He further testified that, after the formation of the company and the purchase of the stock by himself and Robinson, the company attempted to manufacture the specialties to which reference has been made, under the superintendence of Griffiths personally; that premises were hired and machinery purchased for the purposes of the business, which was conducted for a time under the personal superintendence of the defendant Thomas Griffiths, who afterwards left the country, leaving behind him his nephew as his representative. The defendant also gave evidence tending to show that the statement alleged to have been made by Griffiths that pyrodene did not contain a single, objectionable ingredient, such as potash, alum, etc., was false, and that the aquol paint faded and washed off, and rotted the wood and oakum when used upon boats.

On cross-examination the defendant testified that the note in suit was subsequently delivered to Mr. Clinch, the attorney who represented him and the other parties by whom notes were given, upon this appeal and other appeals now before the court. He states that at or about the time of such delivery he and Mr. Naylor made a report in writing, not to the trustees of the company, but to Mr. Clinch, and that upon such report

the stock was delivered to Mr. Clinch. Then, after denying that he had made any examination in reference to the qualities of the paints, he states that from time to time he may have made statements at the meetings of the trustees of the company that his report was not complete, and that he was not ready to make it. He states, however, that he sent an order to Mr. Clinch to deliver the stock, and the paper was offered and received in evidence, and is marked "Exhibit M." That order states that "Wm. M. Onderdonk and Henry Naylor, acting for the trustees of the American Aquol & Pyrodene Paint Co., being a committee on tests, appointed by said trustees on August 23, 1889, certify that we have tested certain specialties purchased from Thomas Griffiths by the American Aquol & Pyrodene Paint Company, and that by the manufacture of said specialties it has been demonstrated that they have the qualities respectively ascribed to them in a certain agreement dated 27th March, 1889, between Thomas Griffiths and the trustees of the American Aquol & Pyrodene Paint Co." It then goes on to state: "You will please, therefore, deliver the stock and notes held by you under said agreement as trustees, as prescribed therein." An agreement between Griffiths of the first part and Naylor and others, including the defendant, of the second part, was then put in evidence, in which it was recited that the party of the first part should deposit with Clinch certain certificates of stock of the American Aquol & Pyrodene Paint Company, which certificates are enumerated in the body of the agreement, and are stated as standing in the name of the party of the first part, and indorsed by him in blank. It was further agreed by said agreement that the party of the second part should place in the hands of Clinch the following notes, all indorsed to the order of the said parties of the second part. The notes are then enumerated, and among them is the note in suit. It was also stated that the note of the said company for $18,500, hereinbefore referred to, was placed in the possession of Mr. Clinch. It was then agreed that Mr. Clinch should hold said stock and notes as trustee, until such time as Mr. Onderdonk, or Mr. Naylor, acting for the parties of the second part, should notify him that by the manufacture of the certain specialties assigned and transferred to said company it had been demonstrated that said specialties have the qualities respectively ascribed to them in a certain agreement between Griffiths and Wedemeyer and others, — being the agreement dated March 27, 1889, hereinbefore referred to. It was further provided in said agreement that upon receiving said notification said Clinch should hand over to Naylor, Onderdonk, Pool, and others, the parties of the second part, or to such party or parties as they might designate, all of the notes in said agreement referred to.

The plaintiff also, on the cross-examination of said defendant, put in evidence a notification, dated September 24, 1889, and signed by Onderdonk and Naylor, in which it is stated that it has been demonstrated that said specialties have the qualities ascribed to them in the agreement dated March 27, 1889, and that "you are therefore authorized to deliver to the persons named in the agreement the certificates of stock therein referred to, and to deliver the notes therein referred to to Mr. Thomas

Griffiths." The delivery by Mr. Clinch of the notes and stocks was also proven, and the receipts therefor, signed by the respective parties, were produced. The plaintiff also proved by Mr. Ferris, who at one time acted as assistant secretary of the company, that he kept certain minutes, covering a period between the 1st day of August, 1889, and the 1st day of January, 1890, and that the same were correctly stated in the book then produced. The reception of this book in evidence was objected to, on the ground that there is no evidence that the report therein contained was ever presented by anybody, and that it appears on the face thereof that neither Naylor's nor Onderdonk's name was attached to it. Those minutes contain a report purporting to be made by the committee on tests to the trustees and stockholders of the corporation, in which it is stated, in substance, that the investigations made by the committee tallied satisfactorily with all the representations made by Mr. Griffiths, and fully substantiated the claims of the March agreement. It was further stated that "we desire to further add that in these investigations we have taken nothing for granted, but have gone through all the details." The witness by whom these minutes were proved stated that he did not know anything about the report, as to who made it or who drew it; and Onderdonk, on being recalled, stated that such report was presented to him for his signature, and that he refused to sign it.

It is evident that the state of facts proven upon this trial was very different from that which was before the court upon the previous appeal. On that appeal, as already stated, the judgment was reversed on the ground that the defendant was not permitted to give evidence tending to show that the note was procured by false representations made by Griffiths to the defendant Onderdonk; it being held that the testimony of plaintiff in his deposition, stating that he purchased the note in good faith and for value, was not conclusive evidence against the defendant upon the question of fraud, and did not preclude him from giving evidence to prove the fraud. It appeared upon this trial that the negotiations and transactions between Griffiths and the defendant and those associated with him resulted in the agreement by which Clinch was to hold the stock and notes as trustee until such time as Onderdonk or Naylor should notify him that the specialties in question had been demonstrated to have the qualities ascribed to them in the agreement dated March 27, 1889, and that upon receiving said notification Clinch should hand over the stock and notes to the parties respectively entitled thereto. There is no dispute about the fact that certain tests were made, and that the notification to Clinch was given by the committee on tests, and that Clinch, acting thereupon, delivered the stock and notes as therein requested. There is no proof in the case showing or tending to show that any deception was resorted to by Griffiths, or misrepresentation made by him, in making the tests, for the purpose of obtaining the notification to Clinch, which was signed by Onderdonk and Naylor; and, even if there had been, the answer does not aver that the same was obtained from Clinch by fraud or misrepresentation. The misrepresentations set up in the amended answer of the defendant, as we have already seen, related to the character, quality, and cost of the articles described in the

first agreement; and that agreement, so far as this case is concerned, resulted or was merged in the agreement for the deposit of the certificates and notes with Clinch, which is undated, but which is marked as "Exhibit L." There was no proof of any fraud on the part of Griffiths in procuring the latter agreement, nor in obtaining the notification subsequently addressed to Mr. Clinch by Onderdonk and Naylor, directing the delivery of the stock and notes, which notification bears date September 24, 1889; and we agree with the learned judge at circuit that, upon the proof of that agreement, the element of fraud was eliminated from the case, and disappeared as soon as it and the certificate to Clinch were produced. It seems to us, therefore, clear that the point on which the former judgment was reversed and the new trial granted was not presented on the retrial, there being no allegation nor proof of fraud on the part of Griffiths in respect to the agreement marked "Exhibit L" and the notification to Clinch. The burden of proof was therefore not shifted by the defendant's evidence from the defendant to the plaintiff. All that was called for under the agreement Exhibit L had been proven, and it cannot be said that there was a failure of the consideration for which the notes were given. The plaintiff was not bound to prove more than that he had become the holder of the note in good faith and for value, and that is shown by the evidence contained in his deposition. There is nothing adverse to these views in the cases of Vosburgh v. Diefendorf, 119 N. Y. 357, 23 N. E. Rep. 801, and Joy v. Diefendorf, 130 N. Y. 6, 28 N. E. Rep. 602. Those cases simply hold that where, in an action upon a promissory note, brought by the transferee, the maker establishes that the note was obtained from him through fraud, the burden rests upon the plaintiff to establish that he is a bona fide purchaser. If it be contended that the evidence tended to establish a want of consideration as between the maker and the payee, the answer to that position is that in such a case the burden of proof rests upon the defendant, and that the evidence in this case, which is uncontradicted, shows that the conditions and consideration upon which the note and stocks were delivered to Clinch had been fulfilled at the time when he, under the direction of Onderdonk and Naylor, turned over the notes and stock in question.

Various exceptions were taken by the defendant's counsel to the rulings of the court in sustaining objections to questions asked of the witness Onderdonk and others. Those questions related to what was done by Griffiths in making the demonstration as to the character and quality of the articles which formed the subject of the previous negotiations between the parties, which, as we have been, were merged in the final agreement Exhibit L, and there was no allegation in the defendant's answer which made the proof sought to be obtained by the answers to such questions competent or relevant. Whether it is or is not true that Onderdonk and Naylor did not sign the report which, by the minutes proven by Ferris, purported to have been presented by them, is immaterial, in view of the statements made by them in their communication to Clinch under date of September 24, 1889. We think, too, that the offer of the defendant's counsel to prove that the specialties referred

to in the agreement of March 27, 1889, did not have the qualities ascribed to them in that agreement was properly rejected, inasmuch as, as has been already stated, that agreement had been merged in the agreement Exhibit L, which agreement was fully complied with, without, so far as the evidence discloses, any fraud on the part of Griffiths. The element of fraud being eliminated from the case, and it appearing upon the evidence that the plaintiff was a bona fide holder of the note in suit, for value and in good faith, we are of the opinion that the court below was correct in directing a verdict for the plaintiff, and the judgment and order appealed from should therefore be affirmed, with costs and disbursements.

VAN BRUNT, P. J., and O'BRIEN, J., concur in result.