### MAISEL v. DRUCKER.

(Supreme Court, Appellate Term. April 4, 1911.)

1. COURTS (§ 190*)—MUNICIPAL COURTS—APPEAL.
   On appeals from the Municipal Court, the Supreme Court may reverse a verdict, where it clearly appears that it is the result of mistake.
   [Ed. Note.—For other cases, see Courts, Dec. Dig. § 190.*]

2. COURTS (§ 190*)—MUNICIPAL COURT—APPEAL.
   Under the rule that the Supreme Court should affirm or reverse according to the justice of the case, it may reverse a finding of a justice of the Municipal Court, where it clearly appears that he proceeded on an erroneous theory, even though both parties join in requesting a direction.
   [Ed. Note.—For other cases, see Courts, Dec. Dig. § 190.*]

3. COURTS (§ 190*)—MUNICIPAL COURT—APPEAL.
   Where the record shows that the trial justice, after hearing an interested party, did not believe him, but found in his favor because he believed he was bound to do so as long as the testimony was uncontradicted, the judgment will be reversed.
   [Ed. Note.—For other cases, see Courts, Dec. Dig. § 190.*]

   Bijur, J., dissenting.

Appeal from Municipal Court, Borough of Manhattan, Second District.

Action by Israel Maisel against Louis Drucker. Judgment for plaintiff, and defendant appeals. Reversed, and new trial granted.

Argued before SEABURY, LEHMAN, and BIJUR, JJ.

Stanislaus N. Tuckman, for appellant.
Philip Goldfarb, for respondent.

LEHMAN, J. The plaintiff sues upon four notes, made by the defendants Gottfried and Drucker, and payable to one Karl Hershon. The defendants showed by uncontradicted testimony that at the time the notes were made and delivered a petition in bankruptcy had been filed against them, and that for the purpose of effecting a settlement with their creditors they made and delivered to Hershon a series of notes aggregating the amount of $3,000, of which the notes in suit were part. Thereafter Hershon refused to carry out his promise to try to effect a settlement, and returned all the notes, except the four in suit, which he failed and refused to return.

This uncontradicted testimony showed that the title of Hershon was defective, and the plaintiff could no longer rely on the presumption that he was a holder for value, and was bound to show this fact af-

---

firmatively. He testified that he received this note from Hershon in payment of an antecedent debt. His testimony was not directly contradicted, but some doubt was cast upon its veracity by its inherent improbability, the vagueness of his testimony as to the antecedent debt, and especially by the testimony of one of the defendants' clerks that plaintiff admitted to him that he knew that the defendants were in bankruptcy when he accepted the notes, that he was bringing the action only for Mr. Hershon's sake, and that in case he loses this case he will "hold Mr. Hershon responsible for it anyhow."

"Although the testimony given by the plaintiff as to the circumstances under which he obtained the note was uncontradicted, he was an interested witness, and his credibility was for the jury to determine." Engle v. Hyman, 54 Misc. Rep. 251, 104 N. Y. Supp. 390, and cases there cited.

At the close of the case the defendants' attorney asked the trial justice "to let the jury determine whether this man had knowledge of these proceedings or not," and the justice said:

"I think not. I would like to send it to the jury, but I cannot."

He then added:

"I am satisfied that this plaintiff was a party to this transaction. I am satisfied he knew about it, and I am not satisfied he paid the consideration he claims he did, and yet a verdict against him would not stand on the evidence."

I have no doubt but that the learned trial justice was in error as to the weight that must be given to uncontradicted evidence of an interested party, where that evidence is reasonably subject to disbelief, and his refusal to send the case to the jury is manifest error.

The respondent claims that, if this constituted error, it was cured by the subsequent request of both parties for the direction of a verdict. There is little doubt in my mind that, however ill-advised that request on the part of the defendants may have been, it was sufficient to authorize the trial justice to assume the functions of the jury and to decide the facts.

[1, 2] We have, however, frequently held that, on appeals from the Municipal Court, we may reverse a finding of fact of the jury, where it clearly appears that the verdict of the jury is the result of mistake; and in accordance with the rule that we should affirm or reverse according to the justice of the case, without regard to technical errors or defects, I believe that we have the same power to reverse a finding of the trial justice, even where both parties join in the request for a direction, in any instance where it clearly appears that the trial justice proceeded upon an erroneous theory.

[3] Where the record shows that the trial justice, after seeing and hearing an interested party and weighing his testimony, did not believe him, but found in his favor because he believed he was bound to do so as long as the testimony was uncontradicted, an affirmance of the judgment based on an erroneous and unjust theory would be manifestly not "according to the justice of the case."

Judgment should be reversed, and a new trial granted, with costs to appellant to abide the event.

SEABURY, J., concurs.

BIJUR, J. (dissenting). Plaintiff brings this action upon four promissory notes, for $70 each, made by the defendants, payable to and indorsed by one Karl Hershon. The notes were all dated June 10th, and were payable on dates, respectively, from two to three months thereafter.

The defendants showed by uncontradicted testimony that the notes were part of a series delivered to Hershon by them for the purpose of effecting a settlement with their creditors, and that they were converted by Hershon to his own use. Plaintiff claims to have received them from Hershon in payment of a pre-existing indebtedness of $100, plus $170 also advanced to Hershon in numerous cash amounts, thus netting him a profit of $10. He also testified that he knew nothing of the circumstances under which Hershon had obtained the notes. His evidence was entirely uncontradicted.

A witness on behalf of defendants testified to a conversation with plaintiff in December, 1910, wherein plaintiff admitted that "he knew" (indeed, that Mr. Hershon had told him) that the notes were made by the defendants at a time when they were in bankruptcy. Even conceding to the testimony of this witness, which appears to me to be open to some suspicion, its full effect, because it was uncontradicted, it amounts to no more than that plaintiff at some time—it may be long subsequent to his acquisition of the notes—knew that they had been made while the makers were in bankruptcy. But, even supposing that he knew that fact at the time of the purchase by him of the notes, that did not affect the validity of the notes or plaintiff's good title thereto, since the defendants were adjudicated bankrupts on June 4, 1910, and, as pointed out by the trial justice, promissory notes issued by them thereafter were perfectly valid.

Conceding, therefore, that this case falls within section 94 of the negotiable instruments law (Consol. Laws 1909, c. 38), and that the title of Hershon to the paper was defective, there is no evidence whatever to the effect that (under section 95) plaintiff had notice of the defect. Indeed, we may go further, and on the authority of Canajoharie National Bank v. Diefendorf, 123 N. Y. 191, 25 N. E. 402, 10 L. R. A. 676 (and cases involving the same transaction, Vosburgh v. Diefendorf, 119 N. Y. 357, 23 N. E. 801, 16 Am. St. Rep. 836, and Joy v. Diefendorf, 130 N. Y. 6, 28 N. E. 602, 27 Am. St. Rep. 484), assume that, as provided by section 98, it thereupon became incumbent upon plaintiff to prove that he was a holder in due course—in other words, that he had acted in good faith. It would seem that he had sustained that burden.

Inasmuch as both sides moved for the direction of a verdict, it was the duty of the trial judge to pass upon the facts; and he resolved all questions in favor of plaintiff. The evidence is sufficient to support that conclusion.

I do not think that we can properly decide this case upon remarks made by the court in the course of a colloquy with counsel. It has been repeatedly held that the trial judge is not required to act like a dummy; and it is the universal experience that, in discussion of the case with counsel or in the course of other statements, the trial judge may make remarks which, if they were formal decisions, might justify a reversal. Where, however, as in this case, they are evidently mere expressions of doubt, or suspicions passing through the judge's mind while he is endeavoring to weigh the evidence and come to an ultimately just conclusion, they must be given no more nor other weight than that circumstance would warrant. It may also be noted that the judge said that he came to his conclusion with much reluctance. While such remarks may sometimes be regarded as injudicious, they cannot be made the basis for holding that the court has decided against the evidence, which is ample to support its decision.

The judgment should be affirmed.