## WIXON v. ERVAY.

(Supreme Court, Appellate Division, Third Department. March 6, 1912.)

TROVER AND CONVERSION (§ 5*)—SALES—DELIVERY—RIGHT TO WITHHOLD—
PAYMENT OF PRICE.

Defendant sold his wool to N. & Co. to be delivered on cars and paid for on delivery. Most of the wool had been loaded on the cars on Saturday night, when it was agreed that the bills of lading should be irregularly delivered immediately by plaintiff, who was the railroad agent, and that the balance should be loaded the next Monday, on which day N. agreed to settle with defendant for the price. Defendant had loaded on the cars 135 bags when he received from N. a check for the greater part of the price, but refused to complete delivery or let the cars go forward until the whole price was paid. A draft having been drawn on H., to whom N. had sold the wool, and who was present during the delivery on Saturday, he telegraphed plaintiff asking the number of bags on the cars, and, on receiving plaintiff's answer that there were 135, paid the draft. At the time of receiving the telegram and answering it, plaintiff knew there was a dispute between defendant and N. about the wool, and, no settlement having been made by the succeeding Wednesday, defendant removed 10 bags from the car, notifying plaintiff that he had done so, and later consented that the cars go forward. *Held*, that defendant, by consenting to the issuance of the irregular bills of lading and stating to plaintiff, after plaintiff had received H.'s telegram, that there were 135 bags on the cars, did not waive the condition that the title to the wool was not to pass until paid for, nor was he estopped to rely thereon, and hence his withdrawing the wool from the cars was not a conversion.

[Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. §§ 38–50; Dec. Dig. § 5.*]

Smith, P. J., dissenting.

Appeal from. Judgment on Report of Referee.

Action by Henry R. Wixon against Lewis W. Ervay. From a judgment for plaintiff on report of a referee for $618.59, defendant appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, and BETTS, JJ.

Bertrand W. Nye (Irving W. Cole, of counsel), for appellant.
Charles W. Swartwood (E. W. Personius, on the brief), for respondent.

JOHN M. KELLOGG, J. The defendant sold his wool to Northrup & Co. to be delivered on the cars at Odessa, to be paid for on delivery. Defendant ordered the cars, and they were placed at his disposal on the siding. Northrup came to the defendant's place with Herbert, whom he introduced as the man to whom he had sold the wool, and together they sorted and sacked the wool, and a greater part of it was put upon the cars. Defendant had shipped wool and other commodities many times from the station, and the railroad company usually sealed the cars at night; he removing the seal in the morning and continuing with the work of loading. On Saturday night, July 18th, most of the wool had been loaded upon the cars; but 19 bags remained at the defendant's barn. At the request of

Northrup and Herbert, with the knowledge and consent of the defendant, the railroad company delivered bills of lading to Northrup Saturday, at the time when the wool was being loaded upon the cars and some of it still remained at defendant's barn, which stated the weight of the wool, subject to correction, at 20,000 pounds, which bills of lading Northrup indorsed and delivered to Herbert that night, receiving from him a draft on his firm at Philadelphia for the purchase price. Before Northrup and Herbert left the defendant's place Saturday, Northrup, in the presence of Herbert, agreed to settle with the defendant for the wool Monday, and it was understood that Monday, the loading of the remaining wool was to continue. The defendant loaded upon the cars 135 bags of wool, containing about 25,000 pounds. He received from Northrup a check for the greater part of the purchase price and refused to complete the delivery or to let the cars go forward until the whole purchase price was paid. Tuesday Herbert telegraphed to the plaintiff, who was the station agent, asking the number of bags upon the cars. He saw the defendant, and the defendant told him 135, and plaintiff telegraphed the number to Herbert. After receiving the telegram, Herbert paid the draft. At the time of receiving the telegram and answering it, the plaintiff knew that there was a dispute between the defendant and Northrup about the wool and that the defendant refused to let it go forward until settlement was made. No settlement being made Wednesday, the defendant removed from the car 10 bags of wool, notified the plaintiff that he had done so, and on the 27th consented that the cars go forward. The company sent them forward, collecting from the defendant demurrage for the delay in releasing the cars. Herbert made claim upon the railroad company for the wool removed by the defendant from the car. The railroad company settled with him, and plaintiff paid the railroad company the amount it paid and received an assignment of the claim and wool, and brings this action to recover against the defendant for the conversion of the wool so removed from the car, and has succeeded.

Herbert swears that he knew the bills of lading were issued irregularly and that at that time the wool had not been delivered to Northrup and that the wool was then in defendant's possession. It does not appear directly that Herbert was informed that the wool was to remain the defendant's until paid for, but from the fact that he understood that Northrup was purchasing the wool of the defendant, who was delivering it upon the cars, and that the wool upon the cars was still in the defendant's possession, and that he understood that the remaining wool was not to be loaded until Monday, and that Monday a settlement was to be made with the defendant, he is, I think, fairly chargeable with knowledge that payment of the purchase price was to precede a delivery of the wool. The evidence does not indicate that Herbert was informed or believed that the wool had been paid for, or that credit had been given for the purchase price. He knew the wool was being put upon the cars, and the greater part of it was upon the cars when he saw them. The only inquiry was as to the number of bags on the cars. He made no inquiry whether the

wool had been paid for, was ready for shipment, or had been turned over to the railroad company by the defendant. He apparently had confidence that Northrup & Co. would meet their contract so that the wool loaded would be shipped.

It cannot be successfully maintained that by consenting to the issue of the irregular bills of lading, and stating to the plaintiff after the receipt of the Herbert telegram that there were 135 bags of wool on the cars, that that waived the condition of the sale or estopped the defendant from relying upon it. When the cars went forward, they contained about 23,000 pounds of wool, while the bills of lading in terms called for but 20,000. Herbert and plaintiff did not rely upon the bills of lading as regular because they knew that they were irregularly issued and did not correctly state the facts. The plaintiff, when he telegraphed Herbert the number of bags on the cars, knew that there was a dispute with reference to the wool and that the defendant would not consent to its going forward until he was settled with. It was not necessary for the defendant to again repeat his claim to the plaintiff, because he well understood the facts. If plaintiff, when he telegraphed that 135 bags were loaded, had stated the fact, which he knew, that they could not be shipped until paid for, Herbert, if he did not already know the facts, would then have been fully informed. But I think it is evident that he knew that the defendant must be paid for the wool before it would go forward. If he did not know, perhaps he might claim an estoppel against the railroad company; but the railroad company and plaintiff could claim no estoppel against the defendant because they knew the facts.

Where property is sold and no time of payment is agreed upon, payment and delivery are to take place at substantially the same time; the vendor need not part with his property until the purchase price is arranged.

There is nothing tending to show that the defendant intended to or did waive payment for the wool on delivery, or that he did any act which induced the plaintiff or Herbert to believe that he had waived payment. Herbert made his inquiry as to the number of bags upon the car of a person who the defendant knew was fully informed as to the facts, and the defendant is not responsible because Herbert did not receive a statement of the existing facts. The defendant, not having waived his right to hold the wool for the purchase price, is not liable as for a conversion in removing from the car the part of the wool which had not been paid for.

The judgment should therefore be reversed upon the law and the facts, the referee discharged, and a new trial granted, with costs to the appellant to abide the event.

Judgment reversed on law and facts, referee discharged, and new trial granted, with costs to appellant to abide event.

SMITH, P. J. (dissenting). This plaintiff, as assignee of Herbert, stands in Herbert's shoes and can recover if Herbert could have recovered. Otherwise Herbert's right of action is qualified property if

he must find an innocent assignee to whom to sell it. The rule must be the same as governs commercial paper, as held in Vosburgh v. Diefendorf, 119 N. Y. 367, 23 N. E. 801, 16 Am. St. Rep. 836.

At defendant's request the railroad company issued these bills of lading, for the purpose of enabling Northrup to pass them over to Herbert before the property was paid for. As far as Herbert, the transferee, is concerned, therefore, any condition as to the passing of title is waived and Herbert got full title. It matters not that the bills of lading were issued and passed over before the cars were loaded. They were so issued and passed over upon the distinct promise of defendant to finish the loading of all the wool that was purchased, which amount had been agreed upon between him and Herbert. Issued then at his request, upon his promise to complete the loading, it is not for him to complain that they were issued irregularly, or that they did not cover all of the wool which was afterwards put into the car in pursuance of his promise. Nor can he escape by reason of the fact that the bills of lading called for 10,000 pounds of wool in each car, and the 10,000 pounds of wool were in fact delivered in each car. It is stated in the bill of lading that this weight was subject to correction, and after the promise of defendant to load all the wool which had been weighed and bagged in the presence of Herbert and the amount agreed upon, the full amount of wool as determined and promised to be loaded can alone satisfy the requirement of the bill of lading.

This defendant has no claim to the charity of the court. He and Northrup and Herbert were all wool speculators dealing upon equal terms. It cannot be reasonably claimed that Herbert had any knowledge of the special agreement between Ervay and Northrup that the title should not pass until payment, especially after Ervay himself swore that in the conversation with Herbert "not a word was said in regard to paying for it." If plaintiff stood upon an estoppel, this testimony would seem sufficient to prove want of notice in Herbert. But plaintiff stands upon a legal waiver by Ervay of any rights that he might have under his conditional contract in the consent that the bills of lading might issue and be passed over to Herbert before the loading was completed or payment made. Upon the faith of these bills of lading and of the information afterwards conveyed to him from the defendant that the load contained the 135 bags of wool, Herbert paid Northrup for the full 135 bags. This fact of itself, in connection with the evidence of Ervay that not a word was said to Herbert about the way in which the wool was to be paid for, would seem to absolutely negative any claim resting merely upon a vague inference that he had any knowledge of any condition attached to the contract of sale to Northrup. In my judgment, therefore, Herbert should not be made to stand this loss, nor should his assignee, who stands here upon his rights.