BENJAMIN B. MITCHELL and Others, Appellants, *v.* ERWIN J. BALDWIN and FRANCIS E. BALDWIN, Respondents.

*Bills and notes — what proof as to the unlawful diversion of a promissory note imposes on the holder the burden of showing that he is a* bona fide *purchaser thereof for value — declarations of a former owner of negotiable paper are inadmissible to impeach his indorsee's title.*

In an action to recover upon two promissory notes made by the defendants payable to their own order and indorsed by them in blank, evidence was given by the defendants tending to show that they had executed and delivered the notes to a third party merely as memoranda for disbursements made by the third

party in a litigation in which he and the defendants were jointly interested, and that such third party had unlawfully diverted the notes by discounting them.

*Held,* that such proof imposed upon the plaintiffs the burden of showing that they were *bona fide* purchasers of the notes for value.

Declarations made by the third party that the notes were mere memoranda and that the defendants were not expected to pay them are inadmissible against the plaintiffs, as the declarations of the former owner of negotiable paper or of a chose in action are not admissible to impeach the right or title of his indorsee or assignee.

The presumption that the indorsee of a negotiable note is a *bona fide* holder for value is not repelled by proof that the paper, as between the immediate parties, was without consideration. Nor does proof that the proceeds of a note, intended to be discounted, have been diverted from the agreed channel change the rule. But when the maker has shown that the note was obtained from him under duress, or that he was defrauded of it, or that it was without consideration and fraudulently put in circulation, the holder will be required to show under what circumstances and for what value he acquired the instrument.

APPEAL by the plaintiffs, Benjamin B. Mitchell and others, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Chemung on the 17th day of February, 1903, upon the decision of the court, rendered after a trial at the Chemung Trial Term, the case having been taken from the jury, dismissing the plaintiffs' complaint.

*Judson A. Gibson,* for the appellants.

*E. J. Baldwin,* for the respondents.

HOUGHTON, J. :

The action is on two promissory notes admitted to have been made by the defendants, payable to their own order, and indorsed in blank by them. The plaintiffs produced the notes upon the trial and upon the signatures being admitted, introduced them in evidence and rested their case.

By their answer the defendants in effect alleged that the notes were given to one Smith as a mere memoranda of amounts paid out in certain litigation in which he and defendants were interested, that they were not given as evidence of an indebtedness, and that Smith fraudulently diverted them and procured them to be discounted.

The evidence on the part of the defendants established that Smith and themselves were engaged in a series of litigations, seeking to set

aside an assignment of one Hall, and that there was an arrangement between them that the disbursements in that litigation, which was known between them as the "Hall matter," should be borne equally by Smith and the defendants in case of failure, and in case of success, the disbursements should be first paid out of the recovery, and the balance equally divided. Smith, in the first instance, paid all the disbursements, and finally requested the defendants, for the purpose of obviating onerous bookkeeping, to give their notes as memoranda of the various amounts advanced by him. Such notes were given from time to time, payable in three months, and renewed, with interest, as well as such intermediate sums as had been paid during the period which the notes had run added thereto. This renewal of notes continued for a series of years, while the Hall matter was in the various courts, and finally culminated, as is claimed by the defendants, in the giving, as renewals, of the two notes in suit.

The appellants insist that conceding these facts they were not sufficient to overcome the presumption of law that the plaintiffs were *bona fide* holders before maturity, and that the burden was not cast upon them to prove what they paid for the notes, or the circumstances under which they came to their hands. This was the course pursued upon the trial, the plaintiffs standing upon the presumption which it was assumed the law raised in their favor, as conceded holders of negotiable paper.

We think the plaintiffs misapprehended the rule of law applicable to the facts established. If the notes were given as a mere memoranda of the amounts which Smith had advanced in the Hall litigation, and were to be used only for that purpose, and were not to be discounted, as it was proved Smith agreed, then the discounting of them by Smith was a fraudulent diversion, and the burden of proof was shifted to the plaintiffs to show that they were *bona fide* purchasers for value.

There is a class of commercial paper, void between the parties, in which the burden is on the defendant to establish knowledge and lack of good faith on the part of the holder. The presumption that the indorsee of a negotiable note is a *bona fide* holder for value is not repelled merely by proof that the paper, as between the immediate parties, was without consideration. (*Harger* v. *Worrall*, 69 N. Y. 370.) Nor does proof that the proceeds of a

note, intended to be discounted, have been diverted from the agreed channel change the rule. (*Mechanics & Traders' National Bank v. Crow*, 60 N. Y. 85, 87.)

But when the maker has shown that the note was obtained from him under duress, or that he was defrauded of it, or that it was without consideration and fraudulently put in circulation, the holder will then be required to show under what circumstances and for what value he acquired the instrument. (*First National Bank v. Green*, 43 N. Y. 298; *Ocean National Bank of N. Y. City v. Carll*, 55 id. 441; *Vosburgh v. Diefendorf*, 119 id. 357, 366; *Canajoharie National Bank v. Diefendorf*, 123 id. 191, 205; *Joy v. Diefendorf*, 130 id. 6; *Comstock v. Hier*, 73 id. 269, 273; *Nickerson v. Ruger*, 76 id. 279, 282; *McCammon v. Shantz*, 49 App. Div. 460.)

The case of *Harger v. Worrall* (*supra*) well illustrates the rule. There the bill was claimed to have been accepted as an accommodation paper, and discounted for a purpose different from that agreed upon between the parties. The defendants showed these facts and insisted that the burden of proof was then shifted to the plaintiff to show what he paid. RAPALLO, J., says : " Such would undoubtedly be the case had the acceptance been obtained by fraud or duress, or had it been fraudulently diverted from the purpose for which it was given. * * * But in the absence of proof of fraud or misappropriation, the presumption is that the indorsee of a negotiable bill or note is a *bona fide* holder for value, and this presumption is not repelled merely by proof that the bill or note as between the immediate parties was without consideration."

In *Ocean National Bank of N. Y. City v. Carll* (*supra*) the only point presented to the court was whether the plaintiff failed to prove that it was a *bona fide* holder of the note upon which the action was brought, and the court held that possession of the note was sufficient *prima facie* to establish this; but upon its being proved that the note was given without consideration, and fraudulently put in circulation, it was incumbent upon the plaintiff to prove its *bona fide* character.

In *Nickerson v. Ruger* (*supra*) the defendants offered to show that the note in suit had been given to renew a former accommodation note, but had been fraudulently diverted. The exclusion of

the evidence was held error, and in commenting upon it the court said: "But if the facts offered in evidence by the defendants had been proved, the latter would have established, not merely that the note was without consideration and made for the accommodation of Taylor, but that it was fraudulently put in circulation and diverted from the use intended. It would then have been necessary for the plaintiffs to prove, if they could, that they were *bona fide* holders of the note for value or fail in the action."

In *Vosburgh* v. *Diefendorf* (*supra*) the notes in controversy were claimed to have been given as memoranda showing the defendant's interest in a partnership, on the agreement that they were not to be used or transferred; and upon that state of facts the court held that the burden was upon the plaintiff to show, not only that he paid value before maturity, but that he had no knowledge or notice of the fraudulent diversion.

The Negotiable Instruments Law (Laws of 1897, chap. 612), which is but a codification of the law of negotiable instruments, does not change but recognizes this rule. Section 98 of that law provides that every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course. Section 91 defines what constitutes a holder in due course and, among other things, provides that the holder must have taken the instrument in good faith and for value and without notice of a defect in the title; while section 94 defines a defective title, amongst others, as one where a note has been negotiated in breach of faith, or under such circumstances as amount to a fraud.

The learned trial court was, therefore, right, on the proofs before him, in holding that the plaintiffs had failed to show that they were *bona fide* holders of the notes.

But, notwithstanding this, we think the judgment must be reversed because of error in the admission of evidence by the witness Lowman. The witness Douglass had testified as to communications which he had made to the defendants by direction of Smith, and communications from the defendants to Smith, with respect to the notes and their renewals, and that they were mere memoranda

of amounts paid out in the Hall litigation. The defendants went further and, against the objection of plaintiffs, proved by the witness Lowman admissions made by Smith that the notes had been given for this purpose and that the defendants were not expected to pay them, and that he only wanted them renewed so as to keep track of the amounts expended. This evidence was clearly incompetent. Declarations of a former owner of negotiable paper or chose in action are not admissible against the holder or assignee to affect his title or rights. (*Merkle* v. *Beidleman*, 165 N. Y. 21; *Dodge* v. *Freedman's Savings & Trust Co.*, 93 U. S. 379; *German American Bank* v. *Slade*, 15 Misc. Rep. 287.)

While under some circumstances this error might seem to be harmless, yet in the present case there was a very delicate question of fact for the court to decide, and we cannot say that this evidence did no harm. Upon the defendants' own showing there might be very grave doubt that the notes were given under the circumstances claimed. They were renewed in negotiable form every three months, for a series of years, with interest. If they were given as a mere memoranda, these renewals would seem useless and bear very strongly against their contention, and the declarations of Smith, erroneously received in evidence, may possibly have turned the scale in defendants' favor.

The judgment should be reversed and a new trial granted, with costs to the appellants to abide the event.

All concurred.

Judgment reversed and new trial granted, with costs to appellants to abide event.