(99 App. Div. 121.)

CONSOLIDATION NAT. BANK v. KIRKLAND.

(Supreme Court, Appellate Division, Third Department. December 2, 1904.)

1. NEGOTIABLE INSTRUMENTS—BONA FIDE HOLDER FOR VALUE—BURDEN OF PROOF—STATUTE.

Under Negotiable Instruments Law (Laws 1897, p. 733, c. 612) § 98, providing that, when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he, or some person under whom he claims, acquired the title as a holder in due course, the burden is on the transferee of a note from the payee to show, before it can recover against the maker, that it was a bona fide holder for value, where the note is shown to have been fraudulent in its inception.

2. SAME—EVIDENCE—SUFFICIENCY.

In an action against the maker of a note shown to have been fraudulent in its inception, evidence examined, and *held* insufficient to sustain the burden of proof on plaintiff, as transferee from the payee, to show that plaintiff was a bona fide holder for value.

Houghton, J., dissenting.

Appeal from Special Term, Broome County.

Action by the Consolidation National Bank against Elmer E. Kirkland. From a judgment for defendant, plaintiff appeals. Affirmed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Maurice E. Page, for appellant.

Hinman, Howard & Kattell, for respondent.

CHESTER, J. The finding that the note sued upon was fraudulent in its inception is sustained by sufficient evidence. That being so, the burden was upon the plaintiff, to whom it was transferred by Wilson, the payee, to show, before it could recover against the defendant, that it was a bona fide holder for value. Negotiable Instruments Law, § 98 (Laws 1897, p. 733, c. 612); Vosburgh v. Diefendorf, 119 N. Y. 357, 23 N. E. 801, 16 Am. St. Rep. 836; Grant v. Walsh, 145 N. Y. 502, 40 N. E. 209, 45 Am. St. Rep. 626; Mitchell v. Baldwin, 88 App. Div. 265, 84 N. Y. Supp. 1043. We do not think the plaintiff sustained this burden in this case. It does not appear that the plaintiff paid anything to Wilson at the time it discounted the note in question for him, which was made by the defendant, but it does appear that the entire amount of the avails of the note discounted was placed to Wilson's credit on the books of the plaintiff bank. That credit alone, however, was not a payment for the note or a parting of value on the part of the plaintiff. Albany County Bank v. People's Ice Co., 92 App. Div. 47, 86 N. Y. Supp. 773. Wilson died insolvent the next day after the note was so discounted. It is true that at the time of his death the amount to his credit was a sum much less than the amount of such avails, but there is no proof

¶ 1. See Bills and Notes, vol. 7, Cent. Dig. §§ 1680, 1683, 1684.

as to what caused the difference—whether it came from the payment by the plaintiff of an overdraft of Wilson's or by the payment of some other past-due obligation held by the plaintiff against Wilson, or by the payment of checks drawn by Wilson against his account—and we have no right to infer or presume that the difference resulted from any such payments. Spring Brook Chemical Co. v. Dunn, 39 App. Div. 130, 57 N. Y. Supp. 100.

If the avails of the discount were applied to the payment of an existing indebtedness of Wilson's to the plaintiff, it was incumbent on the plaintiff to show that it was expressly agreed between it and Wilson that the avails should be so applied in payment and extinguishment of such indebtedness, in order to establish that the plaintiff was a bona fide holder for value. Case last cited, and Phœnix Ins. Co. v. Church, 81 N. Y. 218, 37 Am. Rep. 494. But there was no such proof. Nor was there any proof that any checks were drawn by Wilson against his account, and paid by the plaintiff, or charged to his account, after the discount and before his death. We think, therefore, that the plaintiff failed to satisfy the burden resting upon it, and that its complaint was properly dismissed.

The judgment should be affirmed, with costs.

PARKER, P. J., and SMITH and CHASE, JJ., concur.

HOUGHTON, J. (dissenting). I differ from my associates upon the proposition that there was sufficient evidence authorizing the trial court to find that the plaintiff was not a bona fide holder for value of the note in question. On the contrary, it seems to me that the uncontradicted evidence shows the plaintiff to be such holder.

The case was evidently tried upon the theory that the discounting of the note and placing it to the credit of Wilson on plaintiff's books was sufficient to establish that plaintiff paid value. I agree that this was not enough to establish that fact. But incidentally, through its cashier, whose evidence was uncontradicted, the plaintiff proved that on the 6th of August, between 10 and 11 o'clock, Wilson obtained the discount of the note in suit, together with five other notes, and that the proceeds of all of them were credited to him before that hour. The proceeds of the note in suit were $2,121.90, and the aggregate proceeds of the other five notes were $1,064.24; the plaintiff giving him credit at that time for $3,186.14. The witness further testified that at the close of the bank on that day there remained to his credit in the bank $1,264.16. Wilson died the following morning before banking hours, and two small checks were paid out of this balance, which are not taken into consideration. The cashier was unable to state which checks were first paid on the day before Wilson's death, and it is apparent from the reading of the evidence that such checks as were paid were in court and exhibited to him on his examination. It is upon the interpretation of this evidence that I differ from the majority of the court. It seems to me that by fair in-

terpretation it must be said that the bank, in due course of business, before it had any notice of the infirmity of the note in question, paid out for Wilson the difference between the balance of $1,264.16 remaining at his death and the $3,186.14 credited to him on the same day. Even if it be assumed that the proceeds of the five small notes were first paid, still the plaintiff had paid out nearly $900 of the proceeds of the discount of the note in suit; and, under section 93 of the negotiable instruments law, it became a bona fide holder to that extent, at least, before it received any notice of infirmity in the instrument.

But it is said that the showing of a deposit of $3,100 and a balance of $1,200 on the same day at the close of banking hours does not establish the fact that the bank paid out the money upon Wilson's order or for his benefit. It seems to me, no other interpretation can be put upon it. It certainly cannot be presumed that the bank officers misappropriated the money or defrauded Wilson of it, for fraud or larceny cannot be presumed. Nor can we presume that the plaintiff falsified its books. Upon the deposit by a customer of a sum of money in a bank, the relation of debtor and creditor is created, and the bank agrees to discharge the indebtedness by paying the checks of the depositor. This is the ordinary and usual course of business. The courts have long taken judicial notice of the general course of business, including the universal practice of banks. Merchants' National Bank of Whitehall v. Hall, 83 N. Y. 345, 38 Am. Rep. 434; Hutchinson v. Manhattan Co., 150 N. Y. 256, 44 N. E. 775. It therefore seems right to presume that the $900 was paid out in due course of business and by check.

It is further claimed that this amount may have been applied upon past-due notes held by the bank against Wilson, or upon an overdraft made by him. There is no evidence that either one of these existed. But if we assume that in the usual course of business the plaintiff did have past-due notes of Wilson it had the right to pay them, if they were payable at his banking house, without any express direction from Wilson, because the making of a negotiable note payable at a particular bank is equivalent to authorizing such bank to pay it out of the moneys of the maker. Griffin v. Rice, 1 Hilt. 184; Ætna National Bank v. Fourth National Bank, 46 N. Y. 88, 7 Am. Rep. 314; Manderville v. Union Bank, 9 Cranch, 9, 3 L. Ed. 639. No further agreement, therefore, was necessary, because the making of the note payable at the bank in the first instance was a sufficient request that it be paid. Even if a note were not payable at the bank, still it would seem that the bank was at liberty to apply the moneys of the depositor to the payment of such note as it owned. In Straus v. Tradesmen's Nat. Bank, 122 N. Y. 382, 25 N. E. 372, Bradley, J., says:

"As a rule, a deposit made in a bank by a person on general account becomes its fund, and the relation between the depositor and the bank is that of debtor and creditor; and, in the absence of any agreement to the contrary, the bank is at liberty to apply the money upon a demand due to it from the depositor."

While I do not think it can be presumed that Wilson had any overdraft at the time of making his deposit, for it is irregular and unauthorized banking to permit it, and a species of fraud on the part of the depositor to create it (Morse on Banking [2d Ed.] 374), and every officer of a national bank is prohibited from certifying a check under such circumstances (Rev. St. U. S. § 5208 [U. S. Comp. St. 1901, p. 3497]), yet, if there were an overdraft, it was a simple loan, payable absolutely and in full (Payne v. Freer, 91 N. Y. 48, 43 Am. Rep. 640).

What would be the effect of a drawer making a general deposit after having thus overdrawn his account? Would he not be presumed, without any express direction, to intend to pay his overdraft? In the general course of business, he would know that instantly upon making his deposit the amount of his overdraft would be taken out, and he credited with the balance. This must be the legal effect of the transaction.

If the plaintiff thus paid any such pre-existing debts upon the purchase of the note in question, it became a purchaser for value, under section 51 of the negotiable instruments law. · To the extent of the $900, at least, which the plaintiff paid out before it had notice of any infirmity of the note in suit, it was a bona fide holder, and the evidence did not warrant the trial court in finding to the contrary. I therefore dissent from an affirmance of the judgment.