═══════

OLINER et al v. GRONICH et al. (No. 7600.)

(Supreme Court, Appellate Division, First Department. July 9, 1915.)

BILLS AND NOTES ☞345—HOLDER IN DUE COURSE—CAUSE FOR SUSPICION —STATUTE.

    Under Negotiable Instruments Law (Consol. Laws, c. 38) § 95, providing that, to constitute notice of an infirmity in the instrument or defect in the title of the person negotiating it, the person to whom it was negotiated must have had actual knowledge of the infirmity or defect, or of such facts that his taking the instrument amounted to bad faith, where one G. stole funds from his employers in Austria, and deposited the money with European bankers, whose correspondents in America sent G. at New York a check for the money, which he indorsed and delivered to N., who cashed it at the plaintiffs' bank, under such circumstances as should have created a suspicion concerning the entire transaction, there being no evidence that the plaintiffs acted in bad faith, nor that if they had inquired

─────────────────────
☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of the drawers of the check, or the bank upon which it was drawn, the night on which it was cashed or the next morning, they would have received any notice of any infirmity, or that G. had no right to cash it, the plaintiffs nevertheless became holders in due course, entitled to recover against the drawers of the check in a suit in which the defrauded employers were impleaded, since something more than suspicion is required to prove bad faith.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 849–852; Dec. Dig. ☞345.]

Clarke and Dowling, JJ., dissenting.

Appeal from Supreme Court Appellate Term, First Department.

Action by Saul Oliner and Isidor Oliner against Herman Gronich and others. Judgment for defendants was reversed by the Appellate Term (152 N. Y. Supp. 235), and defendants appeal. Affirmed.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Morris Cukor, of New York City, for appellants.

Alexander Pfeiffer, of New York City (Alfred D. Lind, of New York City, on the brief), for respondents.

INGRAHAM, P. J. The check in question was a negotiable instrument, issued by the bankers, payable to the order of Goldenberg. It represented money stolen by Goldenberg from his employers in Austria, who are the defendants Gronich in this action; Goldenberg having deposited the money with the correspondents of the drawers of the check in Europe, to be transmitted to Goldenberg in the United States. They sent to Goldenberg at New York a check for this money. There is no question but what the bankers acted in good faith when they sent this check to Goldenberg and without notice of the defendants' claim. Goldenberg indorsed the check and delivered it to one Nussbaum. The circumstances under which it was delivered to him would be sufficient to show bad faith on his part. So, as between him and the defendants, the defendants were entitled to the proceeds of the check. Nussbaum, however, took the check to the plaintiffs, who cashed it for him, and, if they received this check in good faith, without notice of any infirmity, they were entitled to recover it against the makers, payment having been subsequently stopped by the bank upon which it was drawn.

The court found that Nussbaum, with full knowledge of all the facts and circumstances, and with a wrongful and fraudulent intent and purpose, cashed said check at the place of the business of the plaintiffs and received in exchange therefor $1,785.62, and further found that the cashing of said check was not had and done in the ordinary, usual, and regular course of their business, but as an extraordinary and unusual transaction for the plaintiffs, as well as defendant Nussbaum. Now, the only fact upon which this finding can be based was that Nussbaum came to the plaintiffs' banking house at 5 o'clock in the afternoon on the day of the date of check and asked plaintiffs to cash it. Nussbaum had been a depositor in the plaintiffs' bank, and defendant, relying upon Nussbaum's indorsement,

actually cashed the check and paid the money for it. The court further found that the circumstances and conditions surrounding the presentation to the plaintiffs of said check and the demand for the cashing of same by Nussbaum created or ought to have created a suspicion in the minds of said plaintiffs concerning the entire transaction, and ought to have put them on their guard, before delivering the money to said Nussbaum. But, assuming this finding, was sustained by the evidence, still I think the plaintiffs are entitled to recover. There is no finding that plaintiffs acted in bad faith or with knowledge of the fact that this check represented money stolen by the defendant. But it is found that the "circumstances and conditions surrounding the presentation to the plaintiffs of said check created or ought to have created a suspicion in the minds of the plaintiffs concerning the entire transaction, and ought to have put them on their guard. * * *" But, as I understand the rule, this is not sufficient. There must be actual proof of bad faith. It is settled in this state that something more than suspicion is required to prove bad faith on the part of a purchaser of a check or promissory note. See Cole v. Harrison, 153 N. Y. Supp. 200, decided by this court May 17, 1915; Cheever v. Pittsburgh, etc., R. R. Co., 150 N. Y. 59, 44 N. E. 701, 34 L. R. A. 69, 55 Am. St. Rep. 646; Second National Bank v. Weston, 161 N. Y. 520, 55 N. E. 1080, 76 Am. St. Rep. 283; section 95, Neg. Inst. Law (Laws 1909, c. 43).

The plaintiffs' cashing the check, without actual notice of the defendant's claim, seems to me to have constituted them bona fide holders for value, and entitled them to recover from the drawers of the check, for the reason, first, that there was no evidence that plaintiffs acted in bad faith; and, second, if plaintiffs were put on inquiry, they could only inquire of the drawers of the check or bank upon which it was drawn, and there is no evidence in the case to show, if they had made such inquiry on the night on which the check was cashed or the next morning, that they would have received any notice of any infirmity in the check, or that Goldenberg had not a right to cash it.

I think, therefore, the determination of the Appellate Term should be affirmed, with costs.

SCOTT and HOTCHKISS, JJ., concur.

CLARKE, J. (dissenting). The action was begun by the service of a summons and complaint upon Knauth, Nachod & Kuhne, to recover $1,785.62 on a check which had been issued by them which reads as follows:

"March 19, 1913.

"Pay to the order of Benjamin Goldenberg, S. S. Pretoria, Ellis Island, N. Y., $1,785.62."

This had a receipt attached.

"I, Benjamin Goldenberg, S. S. Pretoria, residing in Ellis Island, N. Y., do hereby acknowledge receipt of eighteen hundred $00/100$ dollars, $1300, from Knauth, Nachod & Kuhne, New York, by order of Zivnostenska Banka v Praze Prag, for account of .. .. ..
"Date March 19, 1913.          [Signature]   Benjamin Goldenberg."

This was indorsed on back:

"Benjamin Goldenberg. John D. Nussbaum. Fourth National Bank. Paid March 21, 1913, New York. Pay any bank or trust company or order. March 20, 1913. Oliner Brothers, Bankers, New York. Mar. 20, 1913. The Security Bank of New York, East Side Branch."

And written across the face:

"Payment stopped at request of the Austro-Hungarian Consulate General, New York, March, 21, 1913."

An order was made on the 31st of March, 1913, interpleading Herman Gronich and Isaac Gronich, composing the firm of Herman Gronich & Co., to be substituted as defendants in the place of Knauth, Nachod & Kuhne, and permitting said firm to pay into court $1,785.62, the amount of the check in question, and, on such payment, be discharged from all further liability. Thereafter a supplemental complaint was served by the plaintiffs, alleging: That they were copartners doing business as Oliner Bros. That on the 19th of March, 1913, Knauth, Nachod & Kuhne issued and delivered to the defendant Benjamin Goldenberg their check drawn to his order. That for value received Goldenberg duly indorsed and delivered the said check so indorsed to the defendant John D. Nussbaum, who indorsed the said check and delivered the same so indorsed to the plaintiffs herein, who paid value therefor. That the plaintiffs presented the check at the place mentioned for payment, and demanded payment for same, but payment thereof has been refused. That Gronich and others acting in their behalf requested the firm of Knauth, Nachod & Kuhne to stop payment on said check, and that the said firm of Knauth, Nachod & Kuhne did stop payment of said check pursuant to such request. That no part of said sum has been paid. Then it sets up the interpleader proceedings, and that Knauth, Nachod & Kuhne deposited the same with the city chamberlain. Wherefore plaintiffs demand judgment as follows: That this court adjudicate that the fund deposited with the city chamberlain is properly the fund of the plaintiffs, and that they are the only persons entitled to said money. That this court direct that the city chamberlain pay over to the plaintiffs herein the said sum deposited with him. That this court direct that judgment be entered for the plaintiffs in the sum of $1,785.62, with interest thereon from March 19, 1913. That if there be a deficiency this court direct that judgment be entered against the defendants herein for such deficiency. That the plaintiffs herein have the costs and disbursements of this action.

The amended answer sets up: That during the months of January and February, 1913, in Austria, the said defendant Benjamin Goldenberg wrongfully, improperly, and unlawfully, and without any right or authority, took, received, and collected from various persons the sum of at least $4,800, the money and property of these defendants. The said defendant Goldenberg then and there and ever since then wrongfully, improperly, and unlawfully appropriated and converted, and still converts, the said money to his own use, and refused and still refuses to pay over the same to these defendants, although due demand

has been made therefor. That the sum of $1,785.62 mentioned in the said supplemental complaint and represented by the check therein described was and is a part of the said money and funds so taken, received, collected, appropriated, and converted by the said Goldenberg. That the said $1,785.62, represented by the said check as stated and alleged, was and still is the property of these defendants, who alone were and still are entitled to the immediate possession thereof. That the said check was delivered to the said John D. Nussbaum solely for the purpose of having same collected for the use and benefit of the said defendant Goldenberg, and that the said Nussbaum delivered the said check to these plaintiffs solely for the said purpose. That the said defendant John D. Nussbaum and these plaintiffs, at the time of the receipt by them of the said check and ever since then, had due and timely notice and knowledge of all the facts and circumstances hereinbefore recited, and they took and accepted the said check for the purpose of collecting the moneys represented thereby for the use and benefit of the defendant Goldenberg, and with the full knowldge of all the facts hereinabove recited, without giving or paying any value or consideration therefor. Wherefore these defendants demand judgment as follows: That this court adjudge that the fund deposited with the chamberlain as recited in the supplemental complaint is the property of the defendants Gronich, and that they are the only persons entitled thereto. That the court direct the chamberlain to pay over to these defendants the said sum so deposited.

Upon these pleadings the parties started in for trial upon this stipulation:

"That the question as to whether Oliner Bros. are holders of the instrument in good faith, for value, without notice, be tried as an issue before the court without a jury; that, if the finding be that they were not, a date subsequently will be set upon which to hear evidence as to the embezzlement of the fund deposited in this city by the agent of Herman Gronich & Co. upon the arrival from Austria of the commission already issued to take testimony of witnesses residing there."

This section of the trial proceeded on February 9, 1914, and at the close both parties moved for judgment. The court said:

"To my mind this is a very suspicious transaction; and if I had the slightest doubt about it, it has been confirmed by listening to the tales told on the witness stand. Judgment for the defendants Gronich. Ten days' stay and 30 days to make a case."

Thereafter, on the 5th of May, 1914, the case was continued, evidence being adduced, not only upon the question of the embezzlement, but the witnesses were further examined on the question submitted at the first hearing. Thereafter the court made a decision. It found: That the plaintiffs are copartners in business in New York, and that the defendants Gronich are copartners in business in the city of Czernowitz, Austria. That during the months of January and February, 1913, the defendant Goldenberg was in the employ of the defendants Gronich in Austria as salesman and agent, and as such agent and employé of the defendants Gronich took, received, and collected from

various persons the sum of at least 20,000 kronen—equivalent to $4,000 —the money and property of the defendants Gronich, and immediately thereafter came to America. That the said Goldenberg then and there and ever since then wrongfully, improperly, and unlawfully misappropriated and converted, and still converts, the said moneys to his own use, and refused and still refuses to pay the same to the defendant Gronich, although due demand has been made therefor. That at the city of New York on the 19th day of March, 1913, the banking firm of Knauth, Nachod & Kuhne issued to Goldenberg their check drawn to his order for $1,785.62. That said check was delivered to Goldenberg at Ellis Island on March 19, 1913, while he was being held there as a detained immigrant in proceedings instituted for his deportation upon the charge of having absconded to America with money embezzled in Austria belonging to said defendants Gronich & Co., of which the defendant Nussbaum had due notice and knowledge. That on March 19, 1913, and before the said check was so delivered, the defendants Gronich, through the Austro-Hungarian consulate general, attempted to have the payment of the said check stopped, claiming that the moneys represented thereby were part of the moneys converted and misappropriated by the defendant Goldenberg as aforesaid, all of which was known to the defendants Goldenberg and Nussbaum. That the said $1,785.62, for which said check was given by said Knauth, Nachod & Kuhne to Goldenberg as aforesaid, was a part of the moneys and funds so misappropriated and converted by said Goldenberg from the defendants Gronich. That the said sum for which the said check was drawn and given as aforesaid was and is the property of the defendants Gronich, and they are entitled to its possession. That the defendant Nussbaum is a cousin of the defendant Goldenberg, and acted as his attorney in said deportation proceedings. That on the 19th of March, 1913, said Goldenberg, while detained as an emigrant at Ellis Island, as aforesaid, wrote his name upon said check and delivered it to defendant Nussbaum without consideration and without value, and said defendant Nussbaum so received the same. That said Nussbaum received said check with notice and knowledge that said Goldenberg was detained at Ellis Island in deportation proceedings upon the charge that, having embezzled large sums of money in Austria, he absconded therewith to this country. That said Nussbaum took said check with notice and knowledge that the same represented or was claimed to represent moneys which it was asserted the defendant Goldenberg unlawfully converted and misappropriated to his own use from the defendants Gronich, and that the Austro-Hungarian consulate general, acting for them, was attempting to stop payment of said check. That said Goldenberg delivered said check to Nussbaum, and he received same, with the wrongful and fraudulent intent and for the wrongful and fraudulent purpose of negotiating or cashing same immediately, so as to give the appearance of having negotiated said check to a holder in· due course, and thus place said check and its proceeds beyond the reach of said defendants Gronich, or of the said consulate general acting in their behalf, and so as to use the said proceeds for the benefit of said Gold-

enberg. That Nussbaum, with full knowledge of all the facts and circumstances recited in findings 13 and 14, and with such wrongful and fraudulent intent and purpose, cashed said check on March 19, 1914, at the place of business of the plaintiffs and received in exchange therefor $1,785.62. That the cashing of said check by plaintiffs was not had and done in the ordinary, usual, and regular course of their business, but as an extraordinary and unusual transaction, for the plaintiffs as well as for defendant Nussbaum. That the circumstances and conditions surrounding the presentation to plaintiffs of said check and the demand for the cashing of same by Nussbaum created or ought to have created a suspicion in the minds of said plaintiffs concerning the entire transaction, and ought to have put them on their guard before delivering the money to said Nussbaum. That plaintiffs, at the time of taking said check and before cashing the same for the defendant Nussbaum, had notice and knowledge of facts sufficient to put them to reasonable or proper inquiry, which would have disclosed to plaintiffs that said defendant Goldenberg, the payee of said check, was detained at Ellis Island pending his deportation upon the charge of having absconded from Austria with moneys he there embezzled, of which moneys the fund represented by said check was a part; that said check was made for moneys claimed to have been wrongfully, unlawfully, and fraudulently misappropriated and converted by said Goldenberg from the defendants Gronich, who, through the Austro-Hungarian consulate general of the city of New York, were attempting to stop payment of said check, claiming to be the rightful owners of the funds represented thereby and entitled to the immediate possession thereof, and that the defendant Nussbaum obtained said check without consideration, in bad faith, and with the wrongful and fraudulent intent and purpose of placing said check and its proceeds beyond the reach of the defendants Gronich or their representatives, and for the benefit of defendant Goldenberg, and therefore he, said defendant Nussbaum, sought immediate cash for said check. That the plaintiffs did not take and cash said check in good faith. That in taking and cashing said check plaintiffs acted in bad faith and with the purpose and intent of helping, aiding, and assisting the defendant Nussbaum in carrying out whatever purpose or object he had in view, and in utter disregard of facts and circumstances within plaintiffs' notice and knowledge, which should have created a suspicion in their mind, and which proper or proper reasonable inquiry would have led plaintiffs, before cashing said check, to the discovery of the real facts attending this transaction, as set out in the foregoing findings.

The court found as conclusions of law: That the complaint should be dismissed. That the defendants Gronich are the owners of the $1,785.62, deposited by said Knauth, Nachod & Kuhne to the credit of this action in the office of the chamberlain on the 4th day of April, 1913, together with accrued interest, and that they are entitled to the immediate possession of same.

From the judgment entered thereon plaintiffs appealed to the Appellate Term, which affirmed the same without opinion. Said court

subsequently granted a motion for reargument, and vacated its order of affirmance, and reversed the judgment and order appealed from, and ordered a new trial, without costs of appeal to either party, and subsequently granted leave to appeal to the Appellate Division.

In my opinion, from a careful consideration of this record, the determination of the Appellate Term should be reversed, and the judgment of the City Court reinstated and affirmed. The parties to the controversy chose the manner and method of trial, evidenced by the stipulation entered into at the beginning of the case. The issues as presented were fairly and fully tried, and I think that the findings of the trial court were sustained by the evidence.

It is thoroughly established that Goldenberg was the agent of the defendants Gronich; that he had embezzled their funds, which had been collected by him as their agent; that a portion of said funds were transmitted by him from Austria to Knauth, Nachod & Kuhne; and that the check issued by said firm to him while in detention upon Ellis Island represented a portion of the embezzled fund so previously caused by him to be transmitted from Austria to them for his account. Nussbaum, who was a cousin of his and represented him as his attorney on the deportation proceedings, was a depositor with the plaintiffs, who were private bankers. His account was a small one, the highest monthly balance over a period of two years being $256.62. This check, the largest one he had ever deposited, was presented to the plaintiffs long after general banking hours, and cash requested. The testimony in respect to the circumstances surrounding the cashing of this check by the plaintiffs support the findings that it was an extraordinary and unusual transaction, and that the plaintiffs had notice and knowledge of facts sufficient to put them to reasonable and proper inquiry, which would have disclosed the situation; that the plaintiffs did not take and cash said check in good faith, but acted in bad faith, with the purpose and intent of assisting Nussbaum in getting possession of the money which Goldenberg had embezzled from Gronich & Co. In my opinion, the determination of the Appellate Term, directing the reversal of this judgment, will result in a miscarriage of justice. Therefore the determination of the Appellate Term should be reversed, and the judgment of the City Court reinstated, with costs and disbursements in this court and at the Appellate Term to the appellants.

DOWLING, J., concurs.