IRONBOUND TRUST COMPANY, Appellant, *v.* SCHMIDT-DAUBER COMPANY, INC., Respondent.

(Supreme Court, Appellate Term, First Department, March, 1918.)

Negotiable instruments — bona fide holder in due course — bills, notes and checks — banks — verdict.

In an action against the maker upon four promissory notes protested for nonpayment, the answer alleged that plaintiff, when the notes were discounted, was not a *bona fide* holder in due course in that at the time the notes were negotiated to it plaintiff had notice of the infirmities thereof, of the defect in the title of the person negotiating them and knowledge that the notes were obtained by false representations as to the financial condition of the payee and were without consideration. Upon the trial it appeared that said notes were given by defendant to the corporation payee, with which it had been dealing for about five years, as an advance payment for merchandise, upon the assurance of the president of the payee that it was "A No. 1," at the same time giving to defendant a note of the corporation indorsed by its president individually. About two months after the notes in suit were given, the payee, whose account with plaintiff was overdrawn the day after said notes were discounted, was adjudicated a bankrupt and the merchandise was never delivered. It further appeared that the payee of the notes for several years had been a depositor with plaintiff which had discounted defendant's notes before and they had been paid and that plaintiff made inquiries as to defendant's responsibility at the bank in which he was a depositor. *Held,* that plaintiff had a right to rely on the financial responsibility of the maker, and there being nothing to indicate that the notes which were presented for discount by a representative of the payee who had been in the habit of bringing commercial paper to plaintiff for discount were other than the usual commercial paper, and there being no evidence either that plaintiff had actual knowledge of any infirmity or defect in the notes or that would justify a finding of bad faith, plaintiff's motion for the direction of a verdict in its favor at the close of the entire case should have been granted.

The deposit of the proceeds of the discounted notes to the

credit of the account of the payee, followed by the withdrawal of the entire amount the next day, constituted a valuable consideration and plaintiff remained a holder for value although by special agreement between the depositor and plaintiff bank a portion of said proceeds was withdrawn in cash and deposited in a special reserve fund to meet other obligations of the depositor as they became due.

APPEAL by the plaintiff from a judgment of the Municipal Court of the city of New York, borough of Manhattan, third district, in favor of the defendant, and from an order denying plaintiff's motion for a new trial.

Blandy, Mooney & Shipman (Charles Blandy, of counsel), for appellant.

Greenbaum, Wolff & Ernst (Lawrence S. Greenbaum, of counsel), for respondent.

WEEKS, J. This is an action brought by the plaintiff to recover the sum of $605.61 with interest on four promissory notes made by defendant for $150 each, dated January 15, 1917, to the order of and indorsed by the Looschen Piano Case Company, which were protested for non-payment.

The defendant alleged that the notes were obtained by fraud and misrepresentation and that the plaintiff was aware of the circumstances under which the notes were delivered to the Looschen Piano Case Company and that plaintiff was not a *bona fide* holder in due course, in that, at the time the notes were negotiated to it, the plaintiff had notice of the infirmities thereof, the defect in the title of the person negotiating the notes and had knowledge that the notes were obtained by misrepresentations and were without consideration.

Upon the trial it appeared that the notes in question were given by the defendant to the Looschen Piano Case Company as an advance payment for mer-

chandise upon the assurance of the president of the latter corporation that said corporation was A No. 1, at the same time giving to defendant a note of the piano case company indorsed by its president individually. The defendant had been dealing with the piano case company for about five years and had previously given its notes as advance payment for goods which theretofore had always been delivered, but in the present instance the piano case company went into bankruptcy on March 1, 1917, and the goods were never delivered.

There can be no doubt from the evidence presented that the representation claimed to have been made as to the financial condition of the piano case company was untrue and the principal question therefore is whether the plaintiff had notice or was chargeable with notice of any defect of title when the notes were negotiated.

To establish its good faith and that the notes were purchased in the ordinary course of business before maturity and for value the plaintiff showed that the notes were brought to it on January 16, 1917, and the proceeds thereof less six per cent discount credited to the account of the Looschen Piano Case Company, which at the same time gave plaintiff a check for ten per cent of the face value of the notes, which check was cashed and the cash held in a reserve fund to meet paper of the piano case company then held by the bank; that prior thereto and as early as March 15, 1916, and again in August, 1916, the bank purchased other notes made by the defendant and had made inquiries of defendant's bank as to its responsibility and had kept informed as to defendant's credit; that the earlier notes of defendant had been paid.

It also appeared that the day after the notes in suit were discounted, the account of the Looschen Piano Case Company was overdrawn.

The notes in suit were not presented for discount by the president of the piano case company, who is alleged to have made the false representations, but by a representative of that corporation who was not present when the notes were made and who is not claimed to have any knowledge of the representations and who made no statement in relation thereto at the time. The officer of the plaintiff who received the notes for discount testified that he had no knowledge of any representations having been made for the purpose of getting the notes or that the notes were made in anticipation of piano cases to be thereafter delivered and this testimony is not contradicted.

Although the record shows that in March, 1915, the treasurer of the plaintiff had become the secretary of the Looschen Land and Building Company, an independent corporation, for the purpose of protecting the plaintiff with respect to a loan made by it and secured by the stock of the land company, he testified that he acquired thereby no knowledge of the financial affairs of the piano case company, and had no knowledge thereof except such as he derived from the financial statements submitted to the plaintiff bank. The fact that the land company owned the land and factory used by the piano case company and that the same persons were stockholders and practically the owners of both corporations does not establish that the plaintiff's treasurer had any knowledge of the financial condition of the corporation in which he was neither a stockholder nor an officer.

The deposit of the proceeds of the notes to the credit of the depositor, followed by the withdrawal of the entire amount upon the following day, constituted a valuable consideration and the plaintiff remained a holder for value although a portion of the proceeds was withdrawn in cash and deposited in a special

reserve fund to meet other obligations of the depositor as they became due, such application being made under a special agreement between the depositor and the bank.   *Consolidated National Bank* v. *Kirkland,* 99 App. Div. 121.

The only remaining question is whether at the time the note was negotiated the plaintiff had notice of any infirmity in the instrument or defect in the title of the person negotiating it.

By the Negotiable Instruments Law (§ 95) it is provided that to constitute such notice " the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

It is clear from this record that there was no proof of actual knowledge of the infirmity or defect.   Was there any proof of knowledge of such facts that the action in taking the instrument amounted to bad faith?

The decisions in this state are uniform that mere suspicion is not enough; there must be proof of facts within the knowledge of the person negotiating the instrument of such a character that the taking of the instrument with knowledge of such facts constitutes bad faith.   This is called actual proof of bad faith. *Oliner* v. *Goldenberg,* 168 App. Div. 874, 876.

The rule is clearly stated by Judge O'Brien in *Cheever* v. *Pittsburgh R. R. Co.,* 150 N. Y. 59, 65: " There is not much difficulty in stating the rule of law defining the duties and obligations of a party to whom negotiable paper is presented for discount or sale before due.   He is not bound at his peril to be on the alert for circumstances which might possibly excite the suspicion of wary vigilance; he does not owe to the party who puts the paper afloat the duty of active inquiry in order to avert the imputation of bad faith.

The rights of the holder are to be determined by the simple test of honesty and good faith, and not by a speculative issue as to his diligence or negligence. The holder's rights cannot be defeated without proof of actual notice of the defect in title or bad faith on his part evidenced by circumstances. Though he may have been negligent in taking the paper, and omitted precautions which a prudent man would have taken, nevertheless, unless he acted *mala fide,* his title, according to settled doctrine, will prevail."

Applying this rule to the facts in this case it seems to me impossible to impute bad faith to the plaintiff.

The payee of the note had been a depositor in the trust company for several years; it had discounted defendant's paper before and the notes had been paid; it had made inquiries as to defendant's responsibility at the bank where defendant deposited; it had the right to rely upon the financial responsibility of the maker; there was nothing to indicate that the notes which were presented for discount were other than the usual commercial paper; they were presented by a clerk or representative of the payee who had been in the habit of bringing commercial paper to plaintiff for discount.

As there was no evidence that plaintiff had knowledge of any infirmity or defect in the notes and no evidence that would justify a finding of bad faith, plaintiff's motion for a direction of a verdict at the close of the entire case should have been granted.

The judgment must therefore be reversed, with thirty dollars costs, and a judgment directed for the plaintiff, with costs in the court below.

GUY and MULLAN, JJ., concur.

Judgment reversed, with costs.